# Richards *versus* Richards.

1. It is not every single touching of the wife's person in anger, at a moment of sudden excitement, or of passion, that will authorize the granting of a divorce.

2. The declarations of the husband, unaccompanied by acts, are not a ground for a divorce.

3. The cruelty within the statute which entitles a wife to a divorce from her husband, is actual personal violence, or the reasonable apprehension of it, or such a course of treatment as endangers her life or health, and renders cohabitation unsafe.

4. A man may lay hands on his wife, even rudely, if necessary to prevent the commission of some unlawful or criminal purpose.

ERROR to the Court of Common Pleas of *Crawford county*.

This was an application by Mrs. Richards for a divorce *a mensa et thoro* and allowance of alimony. The parties were married on the 18th of April, 1850, and lived together till the 24th of April, 1854, when the wife left the husband's habitation without his consent, taking with her their infant, about two months old. During all this period, the deportment of the husband was kind and affectionate towards the wife, with the exception of a single act, the cause of the decree in this case. This act is the alleged pulling of her nose, which happened in this way: The wife and sister of the husband were quarrelling, and the wife had a knife in her hand, which she used in a threatening manner towards the

[Richards *v.* Richards.]

sister; the husband interfered, raised his hand to push the wife back, and in so doing put his hand on her face, and created the alleged cause of divorce.

The court, GALBRAITH, P., charged as follows: "If the jury are satisfied from the evidence that the defendant, in anger and rudeness, twisted the nose of the libellant, or inflicted bodily injury, the defendant is within the provisions of the Act of Assembly, and your verdict will be for the libellant. The time has passed by when the barbarism of the right of the husband to inflict bodily or corporeal punishment on the wife obtains a place in our law." Verdict for libellant.

The following were the errors assigned:

"1. The court erred in charging the jury that, if they believed the defendant 'twisted his wife's nose, or inflicted bodily injury on her,' she was entitled to a decree, making a simple act of violence without reference to its character, or to any provocation for it a sufficient cause for divorce.

"2. The court presented to the jury a false issue, making their verdict depend on the mere question of the legal right of the husband to inflict corporeal punishment on the wife, in charging 'the time has passed by when the barbarism of the right of the husband to inflict bodily or corporeal punishment on the wife obtains a place in our law.' This would be proper on an indictment for assault and battery, but not in this case."

*J. W. Farrelly*, for plaintiff in error, referred to *Doane* v. *Doane*, 4 Pa. L. J. 332; *Barrere* v. *Barrere*, 4 John's Ch. R. 189; Pothier, Traite du Contrat de Marriage; *French* v. *French*, 4 Mass. 587; *Holden* v. *Holden*, 1 Haggard, 456; *Oliver* v. *Oliver*, 1 Id. 463; *Harris* v. *Harris*, 1 Phillim. 111; 4 Pa. L. J. 402.

*Church* and *Pettis*, for defendant in error, referred to *Breining* v. *Metzgar*, 11 Har. 156; *Breining* v. *Breining*, 2 Casey, 161; *Butler* v. *Butler*, 1 Par. 329; *Wield* v. *Wield*, 4 Haggard, 565.

The opinion of the court was delivered November 3, 1857, by ARMSTRONG, J.—This was a libel for divorce *a mensa et thoro*, and for alimony. The libel is lost, and cannot be found, but is alleged to be for cruel and barbarous treatment by the husband.

Our Act of Assembly provides that one of the causes for which a divorce may be granted is, when the husband shall, by cruel or barbarous treatment, endanger his wife's life, or offer such indignities to her person as to render her condition intolerable and life burdensome, and thereby force her to withdraw from his house and family. The evidence supposed to bring the

[Richards v. Richards.]

case within the provisions of this act, and which, under the charge of the court, resulted in a verdict for the libellant, was the single act of the husband pulling his wife's nose. It is quite possible that a single act of cruelty, on a single occasion, may be so severe, and attended with such corresponding circumstances, as might, under a fair and liberal construction of this act, justify a divorce. But it is not every single touching of the wife's person in anger, at a moment of sudden excitement or of passion, that should bring down on the husband a sentence of separation more cruel than the act that induced it. The facility with which divorces may be obtained needs no encouragement. Courts of justice should see that they are not decreed for trivial causes, and that if circumstances of aggravation are brought before a jury, those of palliation should also be presented.

. In the case before us, William Richards was never seen by any witness, on any occasion, to lay hands rudely on his wife. The only evidence of his doing so was his own declarations, in presence of the witnesses who testified against him. These should have been taken together, and the excuse as well as the act presented to the jury. Charles Gailor, a witness, says: "I heard Richards say he never laid hands on her but once, when he caught her by the nose; he said she pointed a butcher's-knife at one of his sisters." Ellen Gailor says: "The morning she left he said he never laid hands on her but once, when he pulled her nose; . . . he said the reason he pulled her nose was, she had a knife pointed at his sister; he told her to shut her mouth." Hugh Thompson, says he "had a talk with him; he said he never abused her; said he pulled her nose once." The errors assigned are to the charge of the court, which was as follows: "If the jury are satisfied, from the evidence, that the defendant, in anger and rudeness, twisted the nose of the libellant, or inflicted bodily injury, the defendant is within the provisions of the Act of Assembly, and your verdict will be for the libellant. The time has passed by when the barbarism of the right of the husband to inflict bodily punishment on the wife, obtains a place in our law." This was as much as to say, if the naked act, the only one complained of, was committed, no circumstance attending it could excuse or avert the penalty of a verdict. It was the duty of the court to have stated, with the remarks made, the fact that, at the very time of the act complained of, the wife was pointing a butcher's-knife at her husband's sister. This was part of the declaration upon which conviction was sought, and should all have been taken together, and not so put to the jury as to induce them to think it was excluded from their consideration. In *Eshback* v. *Eshback*, 11 Harris, 343, it was held, that "mere declarations of the husband, unaccompanied by acts, are not a ground of divorce."

And Justice Woodward there pertinently remarks: "Desher,

(a witness,) proves no *acts* of the libellant, but only his declarations and admissions. If such evidence were made a rule of divorce or of justification for desertion, the conjugal tie would become most insecure, for either party could talk it loose, or a convenient witness would never be wanting to sunder it by his oath." And what have we here? The only proof of the act complained of, is found in the declaration of the libellant, and is part of it. I do not say the declarations were not evidence, but I do say they should be taken together as a whole; and when, as in the present case, they are looked *to* as the only proof of *acts,* they lose much of their force when they lack the aid of corroborating evidence. It was proved that Richards sometimes got drunk, and that he was a man of high temper, but none of the witnesses ever knew him to abuse his wife. Did she, then, leave her husband's house *solely* because of bad treatment, or for some other cause? She said to one witness, "William (her husband) always treated her well, drunk or sober;" and to another she said, "the sisters were the cause of her leaving, and she would not go back until they would leave." In *Butler* v. *Butler,* 1 Par. Ch. Cases, 344, Judge King, who gave the subject great consideration, in a very learned opinion, came to this conclusion: "That the cruelty, within our statute, which entitles a wife to divorce from her husband, is actual personal violence, or the reasonable apprehension of it; or such a course of treatment as endangers her life or health, and renders cohabitation unsafe." And he further says: "In limiting our intervention in matrimonial cases, in which cruelty is charged, to cases in which life or health are in any way involved, we occupy safe and prudent grounds."

It will be borne in mind, there were no threats on the part of the husband from which the wife could reasonably apprehend subsequent violence. The whole case stood alone on the allegation of "cruel and barbarous treatment." I submit, therefore, whether it would be salutary to say that the single act, on a single occasion, of pulling a wife's nose, would endanger her life or health, and render life burdensome, and afford just ground for severing the matrimonial union? We think it would not. We think, on the whole evidence, the court might have instructed the jury, that the defendant was entitled to a verdict. A man owes to his wife affection, fidelity, and protection. He has a right to reciprocity of feeling, and he has a right to a reasonable control of her actions, as he is accountable, in many respects, for her conduct. It is a sickly sensibility which holds that a man may not lay hands on his wife, even rudely, if necessary, to prevent the commission of some unlawful or criminal purpose, or the use of a butchers-knife against a relative; some allowance should be made for the frailties of human nature; a man may sometimes, on sudden impulse, be betrayed into the commission of an act, or a harsh

expression, for which, in a moment after, he might be repentant and sorrowful. It would be hard if, for the single act, he must incur the forfeiture of forced separation, the record of which must forever be a source of mortification to himself and children. Rather let the parties remember that as they have once sworn to love and cherish, they should learn to forbear, and no where can the duty of forbearance be exercised with more happy effect than in the marriage sanctuary. If the parties have brought with them to that home, acerbity of temper, or the seeds of disputation and discord, it is there they should educate themselves to mutual love and forgiveness. There is no better way to guard the sacred institution of marriage, than to learn those who enter into the engagement, that it is harder to turn back than to travel on—that it is better they should " bear the ills they have, than fly to others they know not of."

Judgment reversed, and <i>venire de novo</i> awarded.