## May *versus* May.

1. A wife who has separated from her husband cannot maintain an action against him for her separate property under the Act of April 11th 1856 (Husband and Wife), unless she had reasonable cause for leaving him.

2. If the ill-treatment of a wife is such as would entitle her to a divorce, she is justified in leaving her husband.

3. The Act of Assembly distinguishes cruelty, &c., from indignities to the person.

4. To entitle a wife to a divorce for cruelty, &c., there must be actual personal violence, or the reasonable apprehension of it, or such a course of treatment as endangers life or health and renders cohabitation unsafe.

5. A single act of cruelty may be so severe and with attending acts of such atrocity as to justify a divorce.

6. No single act of cruelty that comes short of endangering life is sufficient to justify a divorce.

7. No single act of indignity to the person is sufficient for a divorce: there must be such a course of conduct or continued treatment as renders the wife's condition intolerable and life burdensome.

8. The indignities to the person need not be such as to endanger life or health; but such as would render life too humiliating to bear.

9. Offers of reconciliation and support by husband in this case, not sufficient.

10. When a husband uses his wife's money with her consent for the benefit of the family, without agreement to pay interest, he will not in general be liable for interest.

11. If the husband receives his wife's money for her use and appropriates it to his own without her permission, he will be liable for interest.

May 12th 1869. Before THOMPSON, C. J., REED, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Cumberland county*: of May Term 1869. No. 79.

This was an action of debt by Elizabeth May, by her next friend, &c., against Daniel G. May, commenced March 27th 1868. The plaintiff was the wife of the defendant, who had left her husband: the action was brought under the Act of April 11th 1856, § 3 (Pamph. L. 315, Purd. 702, pl. 29), to recover from him her separate property. The plaintiff was the second wife of the defendant. The cause was tried January 23d 1869, before Graham, P. J. H. G. Musser testified for the plaintiff that defendant told witness that in 1867· his daughter (of his first marriage) said to defendant that she was dressed slovenly and dirty because her mother would not permit her to put on any other clothes; that the defendant took the child back and asked the plaintiff why she dressed the child in that manner; that the plaintiff answered angrily, and the defendant replied to her, "You often said if ever I laid hands on you you would leave," and he then reached and got a whip and gave her two cuts, and that she had been a good wife for several weeks afterwards. Another witness testified to similar declarations of the defendant.

[May v. May.]

J. Sierer, who lived near the defendant, heard screams at defendant's house about 10 o'clock at night on another occasion; he also heard a lash and a cut; the plaintiff was then outside the house; she called "Levi" three times, saying, "hurry." Witness heard defendant's voice, but did not see him.

Levi Rupley, who lived in the house, testified: The night before they separated he heard a woman cry; he came down stairs, found plaintiff and defendant "jangling;" she was casting up to him what she had seen; witness went up stairs, heard her screaming again, came down; he was inside, she on the porch.

Mary May, who lived near, testified that she heard a woman's scream at defendant's; they were quarrelling; plaintiff, with her two children, one eleven months old, came next morning to the house of witness; plaintiff's hand was bleeding, and she had a mark on her breast; she was there sixteen weeks; defendant did not come to see her during that time; he did not appear kind to her.

The monthly nurse testified that during her confinement plaintiff was very ill; the defendant seldom came in to see her; answered her when she spoke to him, and "just went out again."

G. W. Crisswell, Esq., testified: "Mr. May did make a proposition to give her a room in the house, and let her board with the family, but would not consent to let her have any control of kitchen; my object in going to Mr. May's was to try and get them to settle their difficulty; Mr. May appeared to be very much excited; spoke in a harsh manner; said she might occupy a sleeping-room, a small room on first floor; she could come to the table and get her meals, bnt to have no control of the kitchen; that she was to have no part in taking care of the house, in attending to it; might take care of her children, and have that room; Mr. May said he had a girl keeping house, doing the work; Mrs. May said that she would not submit to this proposition; that the girl had locked the cupboard in the kitchen, and would not let her have control of anything—treated her very unkindly; she said she would rather be dead than to live in such a way; Mr. May made another proposition, but I think Mrs. May was not present; it was only made to me; Mr. May said if she would agree to give him a divorce, he would then be willing to pay her back all the money he had received from her; I communicated this to Mrs. May; she refused; she then made a proposition, that was, if he would refund to her the money she had given him, let her have her furniture and clothing, and give her one of his houses in town to live in, and support her, she would be satisfied; I communicated this to Mr. May, and he refused; I think Mr. Eshelman was present when I stated this to Mr. May."

The plaintiff gave evidence of payments made to the defendant by the administrator of her father from her share of his estate,

part in payment of notes for which the defendant was liable to the estate. The payments were made from 1861 to 1866, and amounted to about $2300, including the notes. They had a carriage also of her father's belonging to the plaintiff, which the defendant sold for $75; against her refusal to allow its sale. Part of the claim of plaintiff was a note from the defendant to her, dated August 4th 1866, for $630, payable in one year.

For defendant, a cousin of defendant testified that she kept house for him; the evening before the separation, the witness and defendant were sitting together; he said, " I believe she is outside listening;" witness and defendant both walked to where plaintiff was; she broke in the window; defendant went out; plaintiff cried out the defendant was killing her; defendant had no whip, and did not strike plaintiff, as witness saw; defendant treated plaintiff kindly, provided well for her; plaintiff was unkind to defendant's mother, who lived with him; the house was not clean; plaintiff was stupid and dull from laudanum; would fall asleep. There was other evidence that the defendant treated the plaintiff with kindness, and that she was addicted to the use of opium.

The following are points submitted by defendant, with the answers of the court:—

" 1. If Mrs. May left the house of her husband without being forced so to do by the continuous cruelty to and barbarous treatment of her by her husband, the plaintiff cannot recover."

Answer : " If Mrs. May left without her husband offering such indignities to her person as to render her condition intolerable and life burdensome, she cannot recover; but, to enable her to recover, it is not necessary that the husband's treatment should be so cruel and barbarous as to endanger her life."

".4. There is no evidence in this case of such cruelty and barbarity as would justify the desertion of May by his wife, nor is there any evidence of a refusal on his part to support her, and the plaintiff therefore cannot recover."

Answer : " We cannot instruct you as requested in this point, but refer the evidence to you to say whether he offered such indignities to her person as to render her condition intolerable and life burdensome. A refusal to support is not necessary to enable the plaintiff to recover, if he forced her to withdraw from his family by conduct such as we have described."

" 5. It having been proved by plaintiff's own witnesses that the defendant offered to support his wife, the plaintiff cannot recover."

Answer : " We cannot answer this in the affirmative. The support offered, as proved by G. W. Criswell, was the use of a bedroom for herself and children, with the privilege of eating with the family, but the management of the household was to be com-

[May v. May.]

mitted to a maid, with whom Mrs. May was not to interfere. This is not the kind of support the law requires a husband to afford his wife."

The court, after stating to the jury the facts, &c., further charged:—

" It is true that occasional acts at long intervals by the husband would not justify the wife in separating herself from him. The law requires continuous acts, but prescribes no length of time during which they must be continued, but they must be continued so long as to render the condition of the wife intolerable and life burdensome. As to interest, if you find for the plaintiff that the money was received by the husband for the wife's use, you may allow her interest from the time it was received by her husband. The note will only bear interest from the time it became due.

" On part of the defendant it is alleged that Mrs. May was addicted to taking opium, and at times unfit to attend to her household duties. If so, it would be neither excuse nor justification to the husband for treating his wife with cruelty or harshness. This infirmity ought rather to have induced kindness and mildness on part of the husband."

The verdict was for the plaintiff for $2530.41. The defendant took out a writ of error, and assigned for error the answers to his points and the foregoing part of the charge.

*S. Hepburn, Jr.* (with whom were *J. R. Smith* and *W. G. Sadler*), for plaintiff in error.—Only such cause as would entitle to a divorce will justify a wife or husband in abandoning each other: Butler *v.* Butler, 1 Pars. R. 337; Gordon *v.* Gordon, 12 Wright 238. The cruel treatment must endanger life: Richards *v.* Richards, 1 Wright 237. A single act of violence is not sufficient ground for divorce: 2 Kent's Com. 126; Richards *v.* Richards, 1 Grant 389; Esbach *v.* Esbach, 11 Harris 343. A husband may deny a wife intercourse with her family without giving ground for divorce: Naring *v.* Naring, 2 Phillimore 132. As to the allowance of interest to the plaintiff: McGlensey's Appeal, 14 S. & R. 64; Mellinger *v.* Bawsman, 9 Wright 529; Grabill *v.* Moyer, Id. 530; Towers *v.* Hagner, 3 Whart. 61.

*C. E. Maglaughlin,* (with whom was *C. P. Humerich*), for defendant in error.—As to cruel treatment they referred to Butler *v.* Butler, Gordon *v.* Gordon, Richards *v.* Richards, *supra;* Bishop on Divorce, §§ 744, 745; Smith *v.* Smith, 2 Phillimore 207; Noble's Appeal, 3 Wright 426; Breinig *v.* Meitzler, 11 Harris 159. The offer of support was not sufficient to demand her return. They commented on and compared the cases cited by the plaintiff in error on the question of interest.

12 P. F. SMITH—14

[May *v.* May.]

The opinion of the court was delivered, July 6th 1869, by

WILLIAMS, J.—This was an action by a wife against her husband for money which he had received for her use from the administrator of her father's estate, and from the sale of her personal property. The wife had separated from her husband, and it was conceded, on both sides, that she was not entitled to maintain the action unless she had reasonable cause for leaving her husband; and whether his ill treatment of her was such as to justify her separation, was the main question in controversy in the court below. If it was such as to entitle her to a divorce, then she was justified in leaving him. The act specifies two causes or grounds of divorce for ill treatment: 1st. When the husband has, by cruel and barbarous treatment, endangered his wife's life; 2d. Or offered such indignities to her person as to render her condition intolerable and life burdensome. It is important that these two causes should not be confounded, but kept separate and distinct in considering the question raised by the first assignment of error.

It is not every act of cruelty, on the part of the husband, that will entitle the wife to a divorce—this ill treatment may or may not endanger her life. But to entitle her to a divorce for the cause first specified, there must be actual personal violence, or the reasonable apprehension of it; or such a course of treatment as endangers life or health, and renders cohabitation unsafe: Butler *v.* Butler, 1 Pars. 329; Gordon *v.* Gordon, 12 Wright 238. It is not necessary that there should be repeated and continuous acts of cruelty in order to entitle the wife to a divorce. A single act of cruelty, on a single occasion as suggested in Richards *v.* Richards, 1 Grant 391, may be so severe, and attended with such corresponding circumstances of atrocity as might, under a fair and liberal construction of the act, justify a divorce. But no single act of cruelty, however severe, that comes short of endangering life, is sufficient to justify a divorce.

But cruel and barbarous treatment is not the only ground for a divorce. Indignities to the person constitute another cause. What acts or course of conduct will amount to such indignities seems to be nowhere defined, and perhaps they are incapable of specification or exact definition. But they must be such as, in the language of the act, render the wife's condition intolerable and her life burdensome. A single act of indignity will not be sufficient. There must be such a course of conduct, or continued treatment as renders the wife's condition intolerable and her life burdensome: Richards *v.* Richards, 1 Wright 227. But must the ill treatment or indignities to her person be such as to endanger her life or health? The act does not so declare, and I am not aware of any case which, in express terms, gives to this clause of the act any such construction. Such an interpretation is not demanded

[May v. May.]

by the language or spirit of the act, and would be the insertion of a qualifying provision never intended or designed by the legislature. The language of the act is so plain and clear, and the reasons which influenced the legislature in framing the two clauses precisely as we find them are so obvious, that there can be little or no doubt as to their meaning. The husband's treatment of his wife may be so cruel and barbarous as to endanger her life; and whenever it is so endangered, whether by one or more acts, the legislature intended that it should be a good cause of divorce. The husband, without immediately endangering the life or health of his wife, may offer such indignities to her person as to render her condition intolerable and her life burdensome; and whenever this is the case the framers of the act intended that it should be a sufficient cause of divorce. It is true, that such a course of treatment as would render the wife's condition intolerable and her life burdensome might, in the end, impair her health and shorten her life; but there are indignities to the person which would not seriously endanger her life, though they would render it too humiliating and burdensome for her to bear. If the husband should be in the habit of whipping his wife with a cowhide, from time to time, it might not seriously endanger her life or health; but would not such treatment render the condition of any woman of ordinary sensibility and delicacy of feeling intolerable and her life burdensome? The act carefully distinguishes cruel treatment from indignities to the person (Gordon v. Gordon), and requires that the first shall endanger life in order that it should be a cause for divorce; and if the legislature had intended that the "indignities to the person of the wife" should be of such a character as to endanger life it would have been easy for them to have said so. The omission of any such qualifying provision is the best evidence that they did not intend that it should be superadded. It follows that the court did not err in instructing the jury, in answer to the defendant's 1st point, that if Mrs. May left without her husband offering her such indignities to her person as to render her condition intolerable and life burdensome, she cannot recover; but to enable her to recover it is not necessary that the husband's treatment should be so cruel and barbarous as to endanger her life.

Nor was there any error in the answer to the defendant's fourth point. It was predicated of the assumption, or hypothesis that nothing but the husband's cruel and barbarous treatment of his wife would justify her desertion. If there was no evidence of any such cruelty and barbarity as would justify the wife in leaving her husband, it does not necessarily follow that the plaintiff could not recover. His ill-treatment, though it may not have endangered her life, may have been such as to justify her separation; and if so, the court might properly decline to instruct the jury as requested, and refer the evidence to them, as the learned judge

[May *v.* May.]

did, to determine whether the defendant offered such indignities to the wife's person as to render her condition intolerable and life burdensome. Was there then any evidence of any such indignities? We think there was, and that, if believed, it was sufficient. His whipping her with a cow-hide—his unkind and inexcusable conduct during her confinement, showing an utter want of affection and 'sympathy for her—his installing another as mistress of the house, to whom the keys were committed, and who denied the wife access to the cupboards in her own house—his harsh and severe treatment of her the night before she left, as evidenced by her screams and the marks of violence on her person—and his subsequent conduct, and the feeling which he evinced when the witness, Creswell, went with the wife to the defendant's house "to try and settle the difficulty" between them, was evidence of such ill-usage as justified the court in submitting the case to the jury. The husband gave evidence tending to show that the wife was in the habit of taking laudanum to such an extent that she became dull and stupid from its effect, and that his conduct towards her was kind and considerate. The evidence in this respect was conflicting, and the case was properly submitted to the jury. It was observed by Lowrie, C. J., in Richards *v.* Richards, 1 Wright 228, that "We can exercise no sound judgment without studying the acts complained of in their connection with the character of the parties, and for this we want the common sense of the jury rather than fixed legal rules." Both the court and the jury who saw the parties and their witnesses were satisfied that the wife was justified in leaving her husband, and we cannot say that there was no evidence, or that it was legally insufficient, to justify their finding.

If the plaintiff was justified in leaving her husband, as the jury have found, there was no such evidence of reconciliation, or offer of support on his part, as would prevent the plaintiff from maintaining the action. His offer of support, considering the manner and the circumstances under which it was made, reflects but little credit on his conduct and character as a husband. "He appeared excited:" this is the testimony upon which the defendant's point was founded, "and spoke in a harsh manner, and said she might occupy a small room down stairs on the first floor; and could come to the table and get her meals, but could have no control of the kitchen or household affairs. He said he had a girl keeping the house and doing the work. Mrs. May said she could not submit to these propositions—that the girl had locked everything in the kitchen, and would not permit her to take any part, and treated her very unkindly—she would rather be dead than lead such a life." The defendant made another proposition: "that if she would agree to give him a divorce, he would then be willing to pay her back all the money he had received from her."

[May v. May.]

Under this evidence it could hardly be expected that the court would charge the jury, as matter of law, that the plaintiff could not recover.

The only remaining assignment, requiring notice, is that which relates to the instruction of the court as to the allowance of interest. The court charged that if the jury found for the plaintiff, that the money was received by the husband for the wife's use, they might allow her interest from the time it was received. When the husband uses his wife's money with her consent for the benefit of the family, without any agreement on his part to pay interest, he will not, as a general rule, be liable therefor. But if he receives the money for her use, and appropriates it to his own, without her permission, there is no reason why in such case he should not pay interest: Millinger's Administrator v. Bausman's Trustee, 9 Wright 529. There was no evidence in this case that the husband had used his wife's money with her consent; on the contrary, the evidence strongly tended to show that he used it without her permission. Under these circumstances there was no error in instructing the jury that they might allow interest from the time it was received, and on the note from the time it became due.

As we discover no error in any of the instructions of the court, of which the plaintiff in error has any reason to complain, the judgment must be affirmed.

Judgment affirmed.