## Sadie E. Braun, by her Father and Next Friend, Amos Steelsmith, v. William F. Braun, Appellant.

*Divorce—Pleading—Multifariousness.*

A libel for divorce a vinculo matrimonii is not multifarious because it sets up two causes of divorce, cruel and barbarous treatment and adultery.

*Divorce—Cruel and barbarous treatment.*

A decree granting a divorce to a wife will be sustained when the evidence shows that the husband, in his conduct toward his wife, was guilty of vile indecency, obscenity, dreadful profanity, and coarse and brutal vulgarity, and that he added to this charges against the virtue of his wife, denying the paternity of his children, accusing her of adultery, compelling her to take dangerous drugs, and urging her to consent to a criminal operation, with a view to abortion, and spreading his accusations broadcast, without any apparent cause, except an insane and unfounded jealousy.

Argued Oct. 18, 1899. Appeal, No. 129, Oct. T., 1899, by defendant, from decree of C. P. Butler Co., March T., 1899, No. 8, granting divorce. Before Sterrett, C. J., Green, McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Libel for divorce. Before BARKER, P. J., of the 47th judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

Plaintiff's third point and the answer thereto were as follows:

If the jury find that while Braun and his wife were residing in the city of Pittsburg, his conduct toward his wife and treatment of her were such as to render her condition intolerable and life burdensome, and thereby forced her to leave his house and home, the verdict must be for the plaintiff, and that, too, whether the charge of adultery preferred against her be true or false. *Answer:* That point is affirmed, of course, subject to our general charge as to the requirements of proof as to indignities to the person such as to render her condition intolerable and life burdensome, and further, what we mean by that is this: that if you find the grounds for divorce made out under the allegations of indignities to her person, you would be warranted in granting a divorce regardless of the question as to whether she had been guilty of adultery; that would not affect her right to a divorce on the ground of indignities to the person. [1]

Defendant's points and the answers thereto among others were as follows:

2. To entitle a wife to a divorce on a charge of indignities to the person, the acts of intolerable treatment must indicate a settled, intentional, and continued purpose to injure and annoy her, and pursue a course of conduct for that purpose. Isolated acts which spring from occasional fits of passion will not constitute a cause of intolerable treatment. *Answer:* We cannot affirm that point exactly as put; we do, say to you that isolated acts, whether they spring from occasional fits of passion or not, will not constitute a cause of intolerable treatment; that is, one act will not cause it; there must be a continued course of treatment; I don't mean by that every day, but such acts as would amount to a course of treatment; but we cannot say that the acts must indicate a settled, intentional and continued purpose to injure and annoy her, and that he must pursue a course of conduct for that purpose; that would be placing it too strong. [2]

3. If the improper behavior and conduct of Mrs. Braun, while living in Butler, by meeting one Elmer Blue at the skating rink and on the streets at night, permitting him to call on her at defendant's home, during his absence, and with whom she had been accused of committing adultery, leaving defendant's home and taking with her their child and going to Chicago, without his knowledge and consent, which improper conduct had all been condoned, a reconciliation effected by taking up housekeeping at the city of Pittsburg, when defendant subsequently discovering a man coming from his house at two o'clock in the morning, and discovering Blue's photograph secretly hidden away in her trunk, so provoked the husband that he did call her profane and abusive names, which seemed to properly indicate her conduct, the law, under such circumstances, holds such language insufficient to justify a divorce. *Answer :* We cannot affirm this point exactly as put; the purpose of this point seems to be to ask us to say to you that if the facts averred in it were proved and they so provoked him, Braun, that he did call his wife profane and abusive names, that then under the law that language would be insufficient to justify a divorce; but as we said in relation to the last point, it is a little too strong, in this, that it asks us to fix a rule here by which you would be instructed to say if a certain state of facts existed he would be warranted in using certain abusive language. All we can say to you is that indignities done by a husband which have been provoked by the complaining party are not grounds for divorce, excepting where the retaliation is excessive. That is the law, generally speaking, and we cannot say to you that if he knew such a state of facts as set forth in this point he would be warranted in doing such acts as would amount to indignities to her person, because there certainly might be such a thing as that his acts would be entirely unwarranted by any such knowledge as that assumed to have been proved in this point; in other words, the law does not warrant that a man shall subject his wife to such a course of treatment as would render her condition intolerable and life burdensome, even though guilty of such acts, because the law affords him another remedy. [3]

4. If the jury find from the evidence that Mrs. Braun committed adultery with one Elmer Blue, and that W. F. Braun, her hus-

band, committed like crime, the verdict should be for the defendant. *Answer:* Affirmed, unless you find sufficient evidence of the other grounds alleged to decree the divorce. [4]

5. Even if the jury find the defendant guilty of every charge contained in the libel filed, it is their bounden duty to render a verdict in favor of the defendant, if they find from the weight of the testimony that Sadie E. Braun was guilty of adultery with E. C. Blue. *Answer:* That point is denied. [5]

6. The libellant having blended or united in her petition the charge of adultery and indignities to the person, the verdict should be for defendant, the decree being different in each case. *Answer:* That point is denied. [6]

7. There is not sufficient evidence in this case of intolerable treatment to justify the plaintiff in leaving defendant's house. *Answer:* We cannot so instruct you, because that is a question for the jury; where the defendant has demanded that his case shall be tried before a jury, it is only where the evidence is plainly insufficient on the part of the plaintiff, as in other civil cases, that the court would be warranted in withdrawing it from the jury; there are such material disputed facts in the case that you must determine that we cannot pass on this question; of course you must say whether there is such intolerable treatment as forced her to withdraw from his house. [7]

10. The testimony of libellant to the effect that defendant said she might leave the house if she wished, and from her letter to him on October 31, 1898, stating she had left his house and gone to her father's, according to a previous understanding or promise between them, made within ten days prior to October 20, taken together with the testimony of respondent to the effect that she could have a divorce, but without scandal and reproach upon their innocent child, is such evidence as tends to prove collusion between the plaintiff and defendant. *Answer:* That point is affirmed. [8]

Verdict for plaintiff. The court entered a decree upon the verdict granting a divorce, a vinculo matrimonii.

*Errors assigned* were (1–8) above instructions, quoting them.

*J. D. Watson* and *Lev. McQuistion,* with them *W. A. Forquer,*

*F. H. Murphy* and *W. S. McElroy,* for appellant.—The defendant could have demurred to the bill upon the grounds of multifariousness, or moved the plaintiff to elect upon which charge she would go to trial, but he availed himself of the right to raise the question before the jury : Decamp v. Decamp, 2 N. J. Eq. 294 ; Johnson v. Johnson, 6 John. Ch. Rep. 163.

We submit that the libellant having blended and united in her petition the charges of adultery and indignities to her person, the verdict should have been for the defendant, the decree being different in each case.

From the perusal of the voluminous testimony in this case we submit in all candor that there was no such testimony as justified a divorce upon the ground of personal indignities : May v. May, 62 Pa. 206.

*John M. Thompson,* with him *James M. Galbreath,* **H. L. Christie** and *W. C. Thompson,* for appellee.—The libel was not multifarious : Larson v. Larson, 3 Kulp, 215 ; Ristine v. Ristine, 4 Rawle, 460 ; Quarles v. Quarles, 19 Ala. 363 ; 2 Bishop on Marriage and Divorce, sec. 327 ; Young v. Young, 4 Mass. 429 ; Stokes v. Stokes, 1 Mo. 320 ; McDonald v. McDonald, 1 Mich. N. P. 191.

The evidence was sufficient to sustain the libel : Gordon v. Gordon, 48 Pa. 226 ; Jones v. Jones, 66 Pa. 497 ; McMahen McMahen, 186 Pa. 485.

OPINION BY MR. JUSTICE GREEN, January 2, 1900 :

This was a proceeding for divorce a vinculo by a wife against her husband in which the libel alleged cruel and barbarous treatment and also adultery.   A jury trial was had and resulted in a general verdict in favor of the libellant.   So far as the questions of fact are concerned, the verdict of the jury establishes the truth of both the charges.   An examination of the testimony develops a great mass of evidence, far more than sufficient to justify the verdict on both charges.   It seems almost incredible that any man fit to associate with his fellowmen could possibly be guilty of the vile indecency, the obscenity, the dreadful profanity, the coarse and brutal vulgarity with which this respondent constantly treated his wife.   Added to this, his charges against the virtue of his wife, denying the paternity of

his children, accusing her of adulterous intercourse with other
men, compelling her to take dangerous drugs, and urging her
to consent to a criminal operation, all to produce an abortion,
and spreading his accusations broadcast throughout the com-
munity, without any apparent cause except an insane and un-
founded jealousy, make out a case of such cruel and barbarous
treatment as is seldom heard in courts of justice. The language
he constantly used to his wife is too filthy and vile to quote,
but its citation is unnecessary in view of the verdict, which
settles all controversy respecting it. There is really but one
matter presented by the assignments of error that is worthy of
the least consideration. The appellant claims that it was in-
competent to set up two causes of divorce, cruelty and adultery,
in the same libel, and therefore the libel should have been dis-
missed or the jury directed to find for the defendant. No de-
cision of this Court is cited to support this contention; in fact,
the question does not appear to have ever been before us. In
2 Bishop on Marriage and Divorce, sec. 327, it is said, "If sev-
eral matrimonial wrongs, as, for example, adultery and cruelty,
are each made cause for the same kind of divorce, whether from
bed and board or from the bonds of matrimony, the applicant
for divorce may join all in one libel and take his decree for the
one or more particular offenses which he proves. This is the
universal practice in England and in our states." In Young
v. Young, 4 Mass. 429, it was said, "The libel in this case
charged upon the respondent extreme cruelty and also adultery,
and prayed a divorce a vinculo, or such other decree relative to
the premises as to the court should seem just and lawful."
The bill was sustained. In McDonald v. McDonald, 1 Mich.
N. P. 191, it was held that a bill alleging two grounds for di-
vorce, adultery and habitual drunkenness, is not for that rea-
son multifarious. In Stokes v. Stokes, 1 Mo. 320, it was ruled
that different causes of divorce may be joined in the same bill.
In Morris v. Morris, 20 Ala. 168, it was said: "But even if
two distinct grounds for divorce are contained in the same bill
it is not demurrable on that account." In Quarles v. Quarles,
19 Ala. 363, it was held that a bill for divorce a vinculo matri-
monii which alleges cruelty, adandonment and adultery on the
part of the defendant is not multifarious. To the same effect
are Fritz v. Fritz, 23 Ind. 388, and Griffith v. Griffith, 89 N. C.

113. In Story's Eq. Pleadings, sec. 257, it is said: "The title to the relief prayed is the same whether one or the other of the several alleged grounds be proved. It is well settled that the plaintiff may aver facts of a different nature which will equally support his application."

The case of Johnson v. Johnson, 6 Johns. Ch. Rep. 163, cited for appellant, in which it is held these charges may not be united in the same bill, is ruled upon the special provisions of the New York statute which is different from ours in the points indicated. Thus the chancellor said: "I feel well persuaded from a perusal of the statute which gives jurisdiction on this subject, that the prosecutions for adultery and for cruel usage were contemplated as totally distinct and separate prosecutions."

Thus, upon authority, it seems that the point is not well taken. Upon principle we do not see any sufficient reason for holding that the libellant in a divorce case may not join two or more distinct causes for divorce in the same bill; especially where the decree is the same in both; that is, either both a mensa or both a vinculo. In this case the decree for either cause would be a vinculo. It is contended that the proper decree in a case of adultery ought to contain a prohibition against subsequent marriage with the paramour. But there is nothing in our act which requires that the decree shall contain such prohibition. The act simply provides that in such a case there shall be no such marriage, but that prohibition takes place by force of the statute and does not require the help of a decree, although it is very proper to insert it therein. In this case it happens that the court below made the general decree which gave the parties liberty to marry again. It was competent for the libellant to complain of this and ask the court to correct it, but the respondent has no cause of complaint, and is not entitled to be heard on that subject.

Decree affirmed and appeal dismissed at the cost of the appellant.