## Seebold v. Seebold.

*Husband and wife — Divorce — Personal indignities — Jury trial — Evidence—Testimony of physician as to injuries to third person.*

1. A verdict of a jury in favor of libellant in proceedings for divorce on the ground of personal indignities will be sustained where there is evidence that respondent was addicted to drink, had frequent outbursts of violent temper, called libellant vile and indecent names, was filthy in his habits, frequently struck her and made threats to kill her, and, while respondent denied much of libellant's testimony, the trial judge is of opinion that, by reason of his manner in testifying, respondent's testimony was not entitled to much weight.

2. Where, in such case, respondent had a fight with his son as a result of some family troubles with which libellant had no concern, the physician who dressed the injuries was not permitted to testify as to their nature or cause, as such evidence would have been irrelevant.

Libel for divorce. C. P. Snyder Co., Oct. T., 1926, No. 41.

*A. F. Gilbert*, for libellant.

*W. H. Hackenburg* and *Jay G. Weiser*, for respondent.

POTTER, P. J., June 27, 1927.—On July 12, 1926, this libellant presented her libel, praying that a divorce be granted to her from her husband, the respond-

ent, because of such indignities to her person as to render her condition intolerable and her life burdensome, by reason of which she was compelled to withdraw from his home and family. On Sept. 7, 1926, the answer of the respondent was filed, denying the allegations of the libel and asking for a jury trial. The replication of the libellant was filed Sept. 11, 1926. On Nov. 8, 1926, we made the rule for a jury trial absolute and framed the issue, the question being, "Did the respondent, Harry M. Seebold, offer such indignities to the person of the libellant, Jennie M. Seebold, as to render her condition intolerable and her life burdensome, and thereby force her to withdraw from his home and family?" in which issue the libellant to be the plaintiff and have the affirmative of the question and the respondent to be the defendant and have the negative.

The case, thus framed, was duly tried before a jury at our February Term of Court, 1927, which convened on Feb. 28, 1927, and on March 2, 1927, the jury returned the following verdict: "We find verdict in favor of the plaintiff. J. Frank Keller, foreman."

On March 5, 1927, the defendant, by his counsel, filed a motion for judgment non obstante veredicto, also seven reasons for a new trial, the first four of which are in the usual stereotyped form:

1. The verdict was against the evidence.

2. The verdict was against the weight of the evidence.

3. The verdict was against the law.

4. The verdict was against the charge of the court.

We need take no time or space in a discussion of these four reasons. In our judgment, they are void of merit and are dismissed.

The other three reasons we shall discuss as we pass along hereinafter.

Under the Act of March 13, 1815, § 1, 6 Sm. Laws, 286, we find indignities offered to the wife by the husband as a cause of divorce. Under this act, this cause for divorce was extended to the wife only. But the Act of June 28 1923, P. L. 886, practically re-enacted the Act of 1815, but extended to the husband this cause for divorce also. A marked distinction, we think, is to be made between "cruel and barbarous treatment" and "indignities." The Act of 1815 provides that, "when any husband shall, by cruel and barbarous treatment, have endangered his wife's life," the injured and innocent party shall be entitled to a divorce. The Act of June 25, 1895, P. L. 308, extends to the husband the right of divorce for the same cause. But it is to be noted that the wife has no cause of divorce for this cause against the husband unless the cruel and barbarous treatment endangers her life. As the present action is brought by the wife against her husband, we shall confine ourselves to the consideration of the action by the wife against the husband on the ground of indignities.

We think, however, an application for divorce by the wife against the husband for indignities stands on a different basis. The Act of 1815 provides that, "when any husband shall have . . . offered such indignities to her person as to render her condition intolerable and life burthensome, and thereby force her to withdraw from his house and family, in every such case it shall and may be lawful for the innocent and injured person to obtain a divorce from the bond of matrimony."

On an application by the wife for a divorce on the ground of cruelty, she must prove such a course of cruel treatment as endangers her life, while on the ground of indignities she need only prove such a course of indignities as renders her condition intolerable and her life burdensome. Proof of cruelty

embraces indignities, but the converse is not true. So that indignities embraces a separate and distinct cause of divorce.

In the case of Elmes v. Elmes, 9 Pa. 166, it is said: "To render the condition of the wife intolerable and her life burdensome, it is not necessary there should be blows or cruel and barbarous infliction of batteries that endanger her life. There may be, without that, such indignities to her person as to render her life a burden. The husband is bound to the observance of duty towards his wife; and as marriage is grounded on the original conditions of the sexes and dignified by strong and peculiar sentiments of affection, delicacy and honor, all treatment which violates these principles, habitually and constantly, and proceeds avowedly from hatred, revenge and spite, and which renders even the hours devoted to repose hours of weeping and distress, must render a woman's condition intolerable and her life burdensome."

Indignities to the person of the wife within the meaning of our statutes are a course of humiliating insults and annoyances, practiced in the various forms which ingenious malice could readily devise, and which eventually would destroy the life and health of the wife, although such conduct may be unaccompanied by violence, positive or threatened: Butler v. Butler, 1 Pars. 329. A single act of indignity is not sufficient. There must be a continued course of treatment: Richards v. Richards, 37 Pa. 225. But it need not be such as to endanger her life or health. The act does not so declare, without which we cannot give it such a construction. But there are indignities to the wife which would not seriously impair her health, though they would render it too humiliating and burdensome for her to bear: May v. May, 62 Pa. 206. The act carefully distinguishes cruel treatment from indignities, and requires the first to endanger life, and if the legislature had intended indignities to be also of that character, they could easily have said so. Not having done so, it cannot be superadded: May v. May, supra. The law does not define what is meant by indignities; it is left undefined and depends largely upon the circumstances of each case; but it is certain that it must consist of such a course of conduct as is humiliating and degrading and inconsistent with the wife's position and relation as a wife, and such as is not provoked by her: Melvin v. Melvin, 130 Pa. 6. Charges of unchastity are gross indignities: Melvin v. Melvin, supra.

The case of Oxley v. Oxley, 191 Pa. 474, further bears out our views herein expressed.

In the case of Braun v. Braun, 194 Pa. 287, a divorce was granted where the husband was guilty of vile indecency, obscenity, profanity and coarse, brutal vulgarity.

We have cited some of our earlier cases as tending to substantiate the doctrines herein enunciated, and, upon examination of more recent cases, it is found these same dicta are still adhered to by our courts of last resort, such as Breene v. Breene, 76 Pa. Superior Ct. 568; Bender v. Bender, 86 Pa. Superior Ct. 182; Baker v. Baker, 195 Pa. 407.

Where testimony is taken in open court, and the judge who heard the case has an opportunity to observe their manner of testifying, and when witnesses who are equally interested contradict each other flatly, the conclusion of the judge who heard them as to which is to be believed is not to be lightly disturbed: Krug v. Krug, 22 Pa. Superior Ct. 572.

From the testimony and the records, we learn that this couple were married in the year 1894. That he is fifty-eight and she is forty-eight years of age. They have one child, a son, about thirty years old, who is married and resides in Rochester, New York. During their married life they have resided

Seebold v. Seebold.

at Penns Creek, New Berlin, near Milton, all in Pennsylvania, and in the State of New York. He followed farming as an occupation, and at times was a teamster. He has always been more or less addicted to the use of strong drink, at times becoming grossly intoxicated; this by his own admission on the witness-stand. He is given to violent outbursts of temper. She charges him with calling her a whore, which he denies; that he called her vile and indecent names, which he admits, but says she applied the same epithets to him; that he struck her often, some of which he admits, but claims his blows were induced by her treatment of him. One disinterested witness says she saw him knock her down with his fist, which he denies. The libellant says he was filthy in his habits, unnecessarily soiling his underclothing, used the chamber in his bed-room when not necessary, that he urinated in the stove in the house, which she had to clean out, which he admits; that he often did the same in the coal bucket in the house; that he ran about the house naked and exposed his person to others, as testified to by them. Near neighbors, living a quarter of a mile away, testify they heard him cursing and swearing at his wife. She says he made frequent threats of personal violence to her person; that he had a venereal disease, to which he replied from the witness-stand that he did not know it if he had; if he had, he must have got it from her. She has testified to other acts of indignities on the part of this husband, quite a number of which are corroborated by outside witnesses. He admits some of these acts, denies others, and says all their trouble was produced by her people. He has brought several people who worked for him for a few days or a week or more, who say when they were at his house they saw nothing wrong in his or her demeanor towards each other. We cannot refrain from saying that family fights and quarrels do not usually occur in the presence of outsiders or neighbors. Several of the near neighbors testify he told them he would kill her; that he would lay the whole family out cold. While this may not be legally classed as an indignity to her, not having been said to her or in her presence, at the same time, we think it has some bearing to show the calibre of the man, taken with the other testimony in the case.

His testimony from the witness-stand was given in rather a frivolous, light manner. It was not given with that solemnity and weight that could convince us that he was sincere. It seemed to us from his general demeanor, both on the witness-stand and off, that he rather enjoyed the notoriety he was getting before a court-room full of people. Once we had to reprimand him for his light-aired, frivolous conduct when he was sitting at the counsel table. To make our view plain, we do not think his testimony is entitled to much weight.

This wife, no doubt, has her failings, as we all have, but we think she has endured much at the hands of this husband. We left the question to the jury to decide as to which of these two contending parties they believed, and they say, by their verdict, that they believe the wife, and that she is entitled to a divorce, with which we heartily concur.

Applying the law, as we have herein cited it, to the facts as developed in this case, we have no hesitation in saying that this respondent has repeatedly offered such indignities to his wife as to render her condition intolerable and her life burdensome, and to entitle her to a divorce a vinculo matrimonii. Contrasting the testimony on the part of the wife with that on the part of the husband, from our observation of the parties and their witnesses, we are led irresistibly to this conclusion.

As to the fifth reason for a new trial, it complains of our refusal to admit the testimony of Dr. Rothrock. It appears there was some trouble between the son and his father, the respondent, who claims the son hit him on the

head with a mop-stick, injuring him, and that the son was encouraged in so doing by his mother, the libellant. She and the son say she had nothing to do with this quarrel between the son and the father. Counsel for the defendant offered to have Dr. Rothrock describe the alleged injuries, and asked him the following question: "Detail to the jury what you attended him for and what was the reason for it?" This question was objected to, and we sustained the objection, and rightly so, we think. The injuries to this defendant were occasioned by a tussle between him and his son. The son and his mother both say she had nothing to do with it. We fail to see how any description of his injuries, occasioned in a fight between him and his son, could shed any light upon the question between this husband and his wife. Had she been concerned or had she injured him, the proposed testimony of the doctor might have been proper evidence, but, as between the father and the son, in a suit between the wife and the husband, it was not relevant, material or pertinent to the issue. The admission of it would have been simply lumbering the record with worthless evidence. In a suit for personal injuries, the symptoms, as described by the patient to the physician, in the absence of the other party, are usually admitted, although classed as hearsay, from the necessity of the thing, but we think it should be very carefully received and considered, as such evidence may very easily be turned into self-serving declarations. Several cases are cited by counsel for the defendant which are not in line with the facts of the case before us. We think we properly rejected this proposed testimony, and this reason is dismissed.

The sixth reason complains of our charge to the jury, wherein we are alleged to have said, substantially, that if the purpose of the marriage had been broken down and failed, the verdict should be for the plaintiff. This is not dealing fair with the court. We made no expression as is charged to us. We did say, as follows, on pages 134 and 135 of the notes of testimony: "Again, there is some law which tells us that where the object of marriage has failed, there the plaintiff would be entitled to a divorce. I can only say to you that the object of marriage is a happy and honorable life between a man and a woman, propagation of the human race, and all that sort of thing, at the same time bearing in mind the respect and esteem and the attention that is due from the one to the other. I say to you that if that has failed and marriage has been a total failure, on the one side or the other, without any mutuality to that failure, if it has been produced by the one side, and there can be no reconciliation, under the divorce laws of this State, the offended party would be entitled to a divorce."

Then, again, on page 139, we said, in passing upon one of the defendant's points: "The question is not, can these people live together? That is not the question. Some might say: Well, they might as well be divorced, they are all the time fighting! That is not the question. The question is, did this man do those acts towards his wife that she says he did which would justify her in securing a divorce? No matter whether they can live together or not, that is not before you and it is not before us."

In framing the sixth reason, counsel did not give to the court the advantage of all we said in this behalf. Had they looked further, they would, no doubt, have found it. All we said in this respect should have been embraced in this reason. Perhaps then it would not have been framed. We did not mislead the jury. This reason is dismissed.

The seventh reason complains that we erred in affirming the plaintiff's points and in charging the jury as requested by her. We do not know how we could have done otherwise. The plaintiff presented only two points, the first

Seebold v. Seebold.

drawn in the exact language of the Supreme Court in the case of Oxley v. Oxley, 191 Pa. 474, and the other drawn in the exact language of the Superior Court in the case of Bender v. Bender, 86 Pa. Superior Ct. 182. Both these cases come from our appellate courts and should blaze the way in which we are to travel, and we can do no less than follow the law as they lay it down to us, which we think is correct. It is very easy for an ingenious mind to frame reasons for a new trial, but whether they contain merit or not is another question. This reason is dismissed.

We also have a motion for judgment non obstante veredicto. We think, in our disposition of the reasons for a new trial, we have practically disposed of this motion. We should not enter judgment non obstante veredicto unless we find we should have directed a verdict for the defendant, which we are firmly convinced we should not have done. Wherefore, the motion is refused.

We are bearing in mind that the verdict of the jury in the trial of this case is advisory to the court. We are also bearing in mind that this jury trial was asked for by the defendant. He got it. We think he had a fair and a just trial. The matter was left to the jury to decide, as questions of fact, as to whether they would believe the defendant's version of the matters in dispute or whether they would believe that of his wife. They apparently believed the wife's version, and we think rightly so. We think the defendant has no cause to complain of the adverse verdict.

And now, to wit, June 27, 1927, the reasons assigned for a new trial are dismissed and the new trial is refused, as well as the motion for judgment non obstante veredicto. Let a final decree for a divorce a vinculo matrimonii be prepared and presented to us.          From Charles P. Ulrich, Selinsgrove, Pa.