## Strang v. Strang.

*W. J. Sirdevan,* for libellant; no appearance for respondent.

KENT, P. J., May 7, 1928.—This is a libel, *a vinculo matrimonii,* filed by Mae Strang against Denzil Strang. The master has recommended that the prayer of the petitioner be granted, and that a decree of divorce be entered, by his report filed, from which, however, after a thorough examination of the law and the facts involved, we are compelled to differ. The fundamental legal requisites to sustain jurisdiction in this case have not all been complied with. The libellant's ground of procedure against her husband is based on wilful and malicious desertion, predicated essentially on the fact, as shown by testimony offered, of her having been compelled to leave him, not because of any abuse of such a character as endangered her life or rendered her condition intolerable and life burdensome, and thereby justifying her withdrawal from his home.

The libellant testifies that she was married to the respondent on July 13, 1921, and that thereafter they lived together as husband and wife in his home at Pleasantville, Pa., situate on State Street, until about June 1, 1923, at which time libellant left him on account of his treatment and his failure to provide libellant with food and clothing, or food and clothing for her young children who were living with them, and whom respondent had promised, before marriage, that he would make a home for. And, further, that the respondent was mean and cross most of the time, that he would slam doors and shove furniture around in a rage, and take his anger out on her and the children; that about every time the little four-year-old boy went to the table he would whip him severely, and when libellant tried to interfere he threat-

ened to do the same thing to her if "she didn't look out," and that he frequently told her to take her brats and get out of there.

The libellant testifies further: "It got so that I could not stand his abuse and neglect any longer. My health was run down. I had run down from 120 pounds, which I weighed when I married him, to 100 pounds the time I left. I told him I could not stand it any longer unless he would treat me better and provide for me in a decent manner, and then he told me to get out. That was the day before I left him, and he told me to get out again the next day. My boy, Albert, was there, and he told Albert to get his (the respondent's) car and take me and the children out of his house and not come back. I never did go back and have never lived or cohabited with respondent since the first part of June, 1923. . . . I did all I could to get along with him, but I would not stand it any longer, and was going to leave if he had not ordered me out when I asked him to treat me decently. I am forty-three (43) years old and my husband is now seventy-five (75) years old."

Considering the testimony as a whole, there appears to be an attempt to establish constructive desertion on the part of the respondent for the three following reason, viz.: *(a)* Because of respondent's refusal to provide food and clothing for herself and children; *(b)* because of respondent's cruel treatment to libellant; *(c)* the turning of libellant out-of-doors by the respondent.

It seems to be a well-settled rule of law that a divorce can only be granted for the specific reason alleged in the libel, and, of course, only where that cause is clearly established by the testimony, some courts holding that where a libel in divorce charges desertion, it is improper for the master to permit evidence of cruel and barbarous treatment, as the court could not consider a charge not pleaded; moreover, it would be unjust to the respondent, in that he would have no notice that he would have to meet this testimony at a hearing: Adamson *v.* Adamson, 71 Pitts. L. J. 384.

In the instant case the cause given is the wilful and malicious desertion of the libellant by respondent on or about June 1, 1923, the libel being devoid of any suggestion of constructive desertion on the part of the respondent, because of his failure to provide for his wife and her children, his cruel treatment of her or the turning of respondent out-of-doors or away from his home.

It is equally well established that the wife is entitled to an absolute divorce from her husband on the ground of desertion, even though she, as a matter of fact, left their common habitation, if his conduct was so cruel toward her that she could not live with him in safety to her health or without peril to her life, and for such reasons she left him and abandoned his home: Johnson *v.* Johnson, 27 Dist. R. 1014.

Before the libellant would be entitled to a decree or the court warranted in holding that there was a constructive desertion on the part of the respondent, it must clearly appear from the testimony that the causes relied upon amount to a justification of the wife's withdrawal from the home of the respondent and are such as would entitle her to a divorce. Considering the reasons hereinbefore mentioned in their order, *(a)* respondent's refusal to provide food and clothing for herself and children, this, of itself, is not a sufficient cause for the granting of an absolute divorce in Pennsylvania, the libellant having the benefit of the statutory provision to compel her husband to provide for her support and maintenance. Therefore, the court can only consider this evidence in connection with the other testimony in the case.

Relative to the second reason, *(b)* respondent's cruel treatment of libellant, the libellant testifies that he was mean and cross most of the time; that he would slam doors and shove furniture around in a rage, and take his anger

out on her and the children; that he would whip the young boy severely and would threaten to do the same to libellant when she interfered; that she told him she could not stand it any longer unless he would "treat us better and provide for me in a decent manner, and then he told me to get out;" and that she, the libellant could not "stand it any longer and was going to leave if he had not ordered me out when I asked him to treat me decently." This, in the opinion of the court, does not show such a state of facts as would justify the libellant in leaving the respondent's home because of cruel and barbarous treatment endangering life, or such indignities to her person as to render her condition intolerable or life burdensome; and more particularly so in view of the fact that she clearly testifies that she "was going to leave him if he had not ordered me out when I asked him to treat me decently." Libellant or her witness do not testify to any particular or specific instances of cruel or barbarous treatment or indignities to the person, but only in a general way that respondent was abusive and neglectful, which, in the opinion of the court, falls far short of the measure required to warrant her withdrawal with the effect of converting it into a desertion of her by her husband.

In regard to the third reason, *(c)* the turning of respondent out-of-doors by direct command on two different occasions as well as his abusive treatment and neglect. Considering all of the testimony together, we are clearly of the opinion that there was no such conduct or action on the part of the husband as would compel her to leave, and that the turning out-of-doors, as established by the testimony in this case, fails to show that same was either actual by violence or constructive by threats.

Within the rule laid down in Sowers's Appeal, 89 Pa. 173, it is held: "A divorce *a mensa et thoro* will not be granted on the suit of the wife on the ground that she was turned out-of-doors, when it is not shown that she was ejected by force, or was compelled to leave because of a threat to employ it, and a reasonable apprehension that it would be used against her; or a refusal to receive her upon demand that she should be taken into her husband's house as a wife; or an emphatic refusal to allow her to remain after she had returned, accompanied by the declaration that she wished to remain and conduct herself as a wife should do; or, lastly, where the facts do not show a justification on the part of the wife in withdrawing from the house of her husband."

And, also, as stated by Judge Henderson when he says:

"It does not appear who held the lease of the house, but there is an entire lack of evidence that the appellant was subjected to any compulsion which requried him to leave:" Magee *v.* Magee, 71 Pa. Superior Ct. 594.

"Where the wife, the libellant, attempts to show desertion by testimony that her husband turned her out-of-doors, and that, therefore, the separation was a desertion by him, and the only testimony elicited is by libellant, that they quarreled one night and respondent told her to pack her clothes and go home, and that the next morning she left and went to her sister's home, which testimony was obtained by leading questions, lacked corroboration and was contradicted by other of her statements, a divorce will not be granted, but a rehearing will be allowed.

"A turning out-of-doors, in order to constitute desertion, must be either actual by violence, or constructive by threats. Merely an impatient utterance of the husband, made in the excitement of a passing quarrel, cannot be accepted by the wife as a deliberate and irrevocable command to be gone, nor, when acted upon by her in cold blood, thereafter set up by her as a turning out-of-doors:" Border *v.* Border, 21 Dist. R. 749.

"The causes which operate upon the wife, and force her to withdraw herself from her husband's house and family, must be such as would entitle her to a divorce.

"The act of assembly specifies two causes of divorce for ill-treatment: *(a)* When the husband has, by cruel and barbarous treatment, endangered his wife's life; or *(b)* offered such indignities to her person as to render her condition intolerable and life burdensome. . . . This defense, if sustained at all, must be for the first of the causes above mentioned. Indeed, this is the cause specified in the answer of respondent, though in doing so she has blended the two causes together by saying that she was 'compelled to absent herself from his habitation by libellant's cruel and barbarous treatment, rendering her condition intolerable and life burdensome.' But to entitle her to a divorce for cruel and barbarous treatment, it is well settled that there must be actual personal violence or the reasonable apprehension of it, or such a course of treatment as endangers life or health and renders cohabitation unsafe: May *v.* May, 62 Pa. 206; Gordon *v.* Gordon, 48 Pa. 226; Butler *v.* Butler, 1 Pars. 329:" Detrick's Appeal, 117 Pa. 452.

Considering the testimony as a whole, in our opinion, it fails to show such justification and turning out-of-doors, either actual by violence or constructive by threats, within the rule as laid down in the decisions above cited as would constitute a constructive desertion on the part of the respondent. She was not compelled by force or threats to leave, and the evidence of ill-usage falls far short of the measure required to warrant her withdrawal with the effect of converting it into a desertion of her by her husband. Wherefore, we cannot agree with the learned master in his recommendation that a decree be entered. We are of the opinion that the prayer of the petitioner should be refused.

*Order.*—Now, May 7, 1928, the prayer of the petitioner is refused and the libel dismissed.

From J. Perry Eckels, Meadville, Pa.