## Johnson, Appellant, v. Johnson.

*Divorce—Indignities to person of husband—Act of June 25, 1895, P. L. 308.*

The continuous neglect by a wife of her housekeeping duties and the proper care of her husband and children and frequent absence from home of evenings and even for several days at a time at religious meetings are not such indignities to the person of a husband as will entitle him to a divorce under the Act of June 25, 1895, P. L. 308; nor is her refusal of conjugal intercourse such an indignity within the meaning of the act.

Argued April 10, 1906. Appeal, No. 118, April T., 1906, by plaintiff, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1905, No. 325, refusing divorce in case of Leslie J. Johnson v. Lizzie M. Johnson. Before RICE, P. J., PORTER, HENDERSON, MORRISON and HEAD, JJ. Affirmed.

Libel for divorce.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree refusing the divorce.

54          JOHNSON, Appellant, v. JOHNSON.

*Charles A. O'Brien*, of *O'Brien & Ashley*, for appellant, cited: Elmes v. Elmes, 9 Pa. 166; May v. May, 62 Pa. 206; Mason v. Mason, 131 Pa. 161; Heilbron v. Heilbron, 158 Pa. 297.

No appearance nor paper-book for appellee.

OPINION BY MORRISON, J., May 14, 1906 :

This is an appeal of the libelant from the decree of the court below refusing to grant him a divorce from the bonds of matrimony, under the provisions of the Act of assembly of June 25, 1895, P. L. 308, to wit: "Where a wife shall have by cruel and barbarous treatment or indignities to his person, rendered the condition of her husband intolerable, or life burdensome."

The charge contained in the libel is as follows: "That the said Lizzie M. Johnson, respondent above named, hath by cruel and barbarous treatment rendered the condition of libelant intolerable and his life burdensome. Petitioner further avers that the said Lizzie M. Johnson, respondent, hath offered such indignities to the person of libelant as to render his condition intolerable and life burdensome."

The subpoena in divorce was duly served on the respondent but she did not appear and made no defense whatever. The learned counsel for the libelant does not contend that there is sufficient evidence of cruel and barbarous treatment to entitle the libelant to a decree, but rests his case on indignities to his person.

The learned counsel has presented the libelant's case in an earnest and able argument, in which he seeks to convince us that the evidence establishes such indignities to the person of the libelant as to bring the case within the provision of the act of assembly in that respect. We have carefully read the testimony and given it such consideration as the gravity of the case demands, but we are not convinced that the learned court below erred in refusing a decree.

The substance of the testimony is that on account of the respondent's religious opinions and her practice of attending the meetings of a sect known as the "Seventh Day Adventists," and later another sect known as the "Holiness People," and her absence from home frequently in the evenings, and sometimes for several days at a time, and the neglect of her house-

keeping duties and the proper care of her husband and children, she has offered the indignities complained of. In addition, the testimony of the husband shows that for a period of about two years before the commencement of this suit, the respondent had neglected her household and marital duties, and that during that period she had persistently refused to have sexual intercourse with the libelant, and that such refusal was willful and without any reason but the supposed repugnance to the act itself or to the libelant.

The libelant testified on this subject : " She always gave the same reason for refusing to cohabit with me, and that as soon as God notified her that I had been converted, that she would be the same as she always had been to me, but not until He did notify her. I asked her how she would know this, and she said she often got messages from God."

It can hardly be doubted that the evidence tends strongly to show that this respondent has been seriously neglecting her duties as a wife and mother, and it seems that she assumes grave responsibilities in so conducting herself, that the result may be a total breaking up of the family relation and abandoning her husband and little boys to the snares and temptations of the life that they must necessarily lead without her protecting care and affection. But, notwithstanding all of this, the question confronting us is whether this conduct on the part of the wife constitutes such indignities to the person of the husband as is meant by the act of assembly above quoted.

We have not been referred to, and have failed to find, any controlling decision of the Supreme or Superior Court upon the question of indignities to the person of the husband. Prior to the act of June 25, 1895, there was no law allowing a husband a divorce on account of indignities to his person. The learned counsel for the libelant concedes this and seeks to sustain his contention that the indignities are established, by the evidence, within the meaning of the act, by a number of cases which arose under the act of March 13, 1815, 6 Sm. L. 286 Purdon's Digest, 13th ed., p. 1232: " or when any husband shall have, by cruel and barbarous treatment, endangered his wife's life, or offered such indignities to her person as to render her condition intolerable, and life burdensome, and thereby force her to withdraw from his house and family," etc.

The first case cited by counsel for libelant is Elmes v. Elmes, 9 Pa. 166. But an examination of that case does not seem to us to sustain the contention that this husband has made out such indignities to his person as entitles him to a divorce.

In Krug v. Krug, 22 Pa. Superior Ct. 572, we held: "No single act of indignity to the person is sufficient cause for divorce, there must be such a course of conduct or continued treatment as renders the wife's condition intolerable and life burdensome. The indignities need not be such as to endanger life or health; it is sufficient if the course of treatment be of such a character as to render the condition of any woman of ordinary sensibility and delicacy of feeling intolerable and her life burdensome: Elmes v. Elmes, 9 Pa. 166; May v. May, 62 Pa. 206; Melvin v. Melvin, 130 Pa. 6; Mason v. Mason, 131 Pa. 161; Oxley v. Oxley, 191 Pa. 474." The above cases clearly establish that the indignities which entitle a wife to a divorce must be to the person, as well as serious and continued.

May v. May, 62 Pa. 206, cited by appellant, strongly sustains the doctrine that the indignities to the person must be continued, and to such an extent as to render the wife's condition intolerable and life burdensome.

In Mason v. Mason, 131 Pa. 161, cited by appellant's counsel, we find the following in the opinion of Mr. Justice WILLIAMS (p. 164): " Bad temper alone is not a ground for divorce, nor is mere drunkenness, or indolence, or thriftlessness, or jealousy; but when to all these is added a course of the most abusive and humiliating treatment, public and repeated charges of the crime of adultery and abortion, threats to shoot, to kill, to cut out her heart, to cut her into mince-meat, and the like, accompanied by such unmistakable evidences of the purpose to carry his threats into execution as was offered by drawing a razor, by pushing her off the porch of the house, and by breaking up her home, and throwing its contents into the streets, it seems very clear to us that the condition of this wife was made intolerable and her life burdensome." That was a case of divorce on the grounds of indignities to the person of the wife and the court below dismissed the libel and refused a decree in divorce. It is true that the Supreme Court reversed this decree and granted the divorce, but an examination of the tes-

timony shows that it goes far beyond anything proved or even alleged in the present case.

We are also referred to Heilbron v. Heilbron, 158 Pa. 297. That was a case evidently under the Act of March 9, 1855, P. L. 68, and it was practically based on cruel and barbarous treatment, although the libel was not well drawn, but on account of the strength of the testimony the Supreme Court reversed the court below, and directed an amendment of the libel and thereupon decreed a divorce. We are not able to discover anything in that case which strengthens the libelant's position in the present one.

In Gordon v. Gordon, 48 Pa. 226, it was held that under the act of 1855 " personal indignities offered by a wife to her husband will not justify him in turning her out of doors ; he must show such cruel and barbarous treatment as renders his condition intolerable and life burdensome, or endangering his life ; such as would entitle him to a divorce." But see Jones v. Jones, 66 Pa. 494.

In Fay v. Fay, 27 Pa. Superior Ct. 328, opinion by RICE, P. J., will be found an interesting discussion of divorce on the ground of cruel and barbarous treatment and indignities to the person, but, in that case, the issue was amended : " At the time the libel was filed, had the respondent, by cruel and barbarous treatment, rendered the condition of her husband intolerable or his life burdensome ? " This limited the trial to the question of cruel and barbarous treatment, and, therefore, the decision is not controlling in a case resting upon indignities to the person, but the case is instructive and thorough, and refers to many decisions of the Supreme Court bearing somewhat upon our question.

In our opinion, the evidence does not establish the indignities to the person of the husband contemplated by the act of 1895 ; this without considering the complaint of the denial of sexual intercourse.

We then have remaining the question of whether the latter complaint is an indignity within the meaning of the act. In our opinion it is not, and upon this question, we are not without authority. In Eshbach v. Eshbach, 23 Pa. 343, this question was before the Supreme Court. In that case there was evidence that the husband did not sleep with his wife, but the Supreme

Court held, in substance that the fact that the husband lay on a separate bed was not ground for a divorce. Citing D'Aguilar v. D'Aguilar, 1 Haggard, 773. While Eshbach v. Eshbach, is not very satisfactorily reported we understand it to mean that the refusal of sexual intercourse is not ground for a divorce. The learned counsel argues that such conclusion is grossly inconsistent because of the act of assembly which allows divorce when " either party, at the time of the contract, was and still is naturally impotent or incapable of procreation." But this argument loses sight of the fact that the impotency referred to in the act must exist at the time of the contract, and for such person to enter into a contract of marriage is, in its legal effect, a fraud, and fraud vitiates all contracts. We are not able to see much analogy between this ground of divorce and the refusal of a competent husband or wife to submit to sexual intercourse with the other.

All of the judges who sat at the argument of this case agree that the libelant failed to make out a case entitling him to a divorce. We, therefore, dismiss the appeal and affirm the decree at the costs of the appellant.