Argued November 24, 1920, affirmed January 11, 1921.

## BOWERS *v.* BOWERS.

(194 Pac. 697.)

**Divorce—Matters Held not "Personal Indignities Rendering Life Burdensome."**

1. Neglect of home premises, failure to supply literature, complaints of expense of dinner parties, and the like, do not amount to "personal indignities rendering life burdensome" within the meaning of the divorce statute.

**Divorce—Not Granted for Mere Incompatibility.**

2. Under the statute as to indignities, annulment of marriage relation is not to be granted for mere incompatibility of temper or uncongenial disposition, but the conduct of the offending spouse must be such as to threaten personal or mental injury to the one

1. On failure to entertain wife or unsociability as grounds for divorce, see note in 51 L. R. A. (N. S.) 460.

complaining, rendering it unsafe for the latter if the marriage rela-
tion is continued.

**Divorce—Allegations as to Adultery must be Supported by More Than Mere Innuendo or Suspicion.**

3.  An allegation as to adultery of spouse in an action for di-
vorce must be supported by more than mere innuendo or suspicion.

**Divorce—Denial of on Ground of Loathsome Disease Held Proper.**

4.  In an action for divorce on the ground of defendant's syphilis,
*held,* that the court properly denied relief under the evidence.

From Jackson: JAMES W. HAMILTON, Judge.

Department 1.

In this suit for divorce the plaintiff wife makes
various charges against her husband which she denom-
inates cruel and inhuman treatment. She says that he
failed to keep his prenuptial promise that they should
have a separate home and that she should not be
burdened with the care of his four children by a
former marriage, but that, on the contrary, he com-
pelled her to take up her residence near Ashland,
Oregon, in a home he had bought in the name of his
said children and which was occupied by them, a
widowed sister, and an uncle of the defendant. She
complains of the responsibility and care thrust upon
her on account of the children, want of help, and petty
annoyances at the hands of the sister, all of which the
defendant did nothing to prevent. Other grievances
to which she gives utterance in the complaint consist
of the defendant's failure to keep the dwelling and
grounds in good order and repair and suitably fur-
nished, so that she was compelled to varnish the furni-
ture, care for the lawn, and do other manual labor in
caring for the premises. She says, too, that over her
protest that she believed a man employed by the
defendant had broken into the house and was therefore
objectionable to her, the defendant disregarded her
wishes and employed the man. The defendant is

accused of stopping her credit at the meat market, so that on one occasion she was embarrassed by being denied credit in the presence of a friend. According to the complaint, the defendant was at fault in not supplying the plaintiff with current magazines and in complaining that she did not make up his bed, although she was worn out with days and nights of watching over their sick child. He also set up in the living-room a heating stove which was objectionable to her; and for weeks at a time he would not speak to her except in the presence of company, at which times he was courteous and agreeable. It is also laid to his charge that he neglected the water system appurtenant to the home so that it became contaminated with dead squirrels and deceased cats, and the plaintiff was compelled to clean out the system; that he complained of the expense of a few dinner parties she gave; that, as she is informed and believes, he either cashed or changed a policy of insurance on his life of which she was the original beneficiary, so that it will be of no benefit to her; and that, although their son was born with a constitutional disease and was a constant care to the plaintiff, the defendant has never manifested any sympathy with her on account thereof. After a long recital of grievances by way of prologue, of which the foregoing is a condensed *résumé,* the complaint contains the following averments:

"That during the married life of plaintiff and defendant a young woman whose name the plaintiff does not care to allege, but will do so if the defendant insists that it shall be alleged, resided for a period of time with the plaintiff and defendant at their said home, and that during her residence with the plaintiff and defendant this said woman became pregnant, and the plaintiff, upon information and belief, alleges that defendant had illicit intercourse with said young woman, and that defendant is the

father of the child of said young woman. That upon one occasion plaintiff overheard a conversation between defendant and said young woman at which time said young woman accused defendant of being the father of her child, which accusation defendant did not deny, and defendant, plaintiff is informed and believes, has been providing said young woman with money, although she is of no relation to defendant.

"That, during the year 1914, the defendant was carrying on a correspondence with a young woman in California whose name the plaintiff does not care to allege, but will do so if the defendant desires that she shall allege the said name, which correspondence was not of a business character and which was of a flirtatious character, and plaintiff is informed and believes that defendant made repeated dates with said woman and met her clandestinely in California and wrote and received from her a number of letters of said character, all of which was without the knowledge or consent of plaintiff.

"That about 15 years ago this defendant was afflicted with a loathsome and incurable disease, to wit, syphilis, and at or about that time the defendant was ill for a great length of time with said disease which resulted in sores upon his body and was treated for this condition, and that at said time defendant knew that he was afflicted with syphilis and knew that for him to beget an offspring would result in said offspring being diseased and afflicted with said disease congenitally and be defective and a great care and burden to those who would have his care and charge. That nevertheless the defendant, without informing this plaintiff of his said condition or of the consequences that would flow therefrom, asserted his marital rights and begot a son, Raymond, who was born about 14 years ago. That said son was born congenitally afflicted with said disease of syphilis and has had ever since his birth, and now has, said syphilitic condition as a result of the previous condition of defendant above set forth. That during all of the times since said son was born he has been a constant

care and worry to the plaintiff due to said condition of said defendant. That during all of said time it has been possible, by proper treatment for said syphilitic condition, to have greatly lessened the suffering and diseased condition of said son, but that this plaintiff never knew what was the cause of said diseased condition of said son, and that defendant, although knowing at all times that said son was suffering from congenital syphilis caused by the condition of the defendant at the time of the conception of said son, concealed said fact from this plaintiff and failed and neglected to afford said son medical treatment which would have alleviated said condition, and that thereby the plaintiff has suffered great hardship in constant nursing and caring for said son and great grief and worry caused by his said diseased condition and his failure to improve in his health.

"That the realization of the condition of plaintiff's said son is a constant cause of worry, suffering, and humiliation to the plaintiff, and the realization that the son of plaintiff and defendant is now afflicted with, and may be required to go through life afflicted with, said condition, is a constant cause of worry, suffering, and humiliation to the plaintiff, which is almost unbearable. That the defendant knew that he was afflicted with syphilis at the time when he had the same, and the failure of defendant to inform this plaintiff that the disease with which he was suffering, and for which he took treatment many months, was syphilis, and his failure to so inform the plaintiff of his said condition was cruel in the extreme, and ever since the plaintiff has learned of the said condition of the said defendant and has learned of the condition of their said son, caused as hereinbefore alleged by the said condition of the said defendant, the plaintiff has suffered beyond expression; and the said failure of the said defendant to so inform the plaintiff of his said condition and the condition of their said son is a continuing condition and act of cruelty, and ever since the plaintiff has learned the facts, as hereinbefore alleged, the plaintiff has loathed and despised the said defendant and ceased to cohabit with

him, and continued cohabitation with him is impossible.''

The Bowers Investment Company was made defendant on the ground that the defendant husband had persuaded the plaintiff to join him in conveying all his real property to that concern, of the stock of which he was the sole owner. No land is described in any of the pleadings. No appearance was made for the investment company, and, in the view of the case taken here, it will not be necessary to make further mention of that defendant.

The cross-complaint of the defendant denounces as false all of the charges made against him by the complaint and counts on the filing of the latter pleading as an act of cruelty on the part of the plaintiff upon which he asks for a divorce. The reply challenged the averments of the answer. The Circuit Court heard the cause on the pleadings and testimony offered by the parties and rendered a decree denying relief to either of them and dismissing the suit. The plaintiff alone appealed.                              AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. Gus Newbury* and *Mr. Porter J. Neff.*

For respondents there was a brief over the names of *Mr. E. D. Briggs, Mr. William M. Briggs,* and *Mr. H. D. Norton,* with oral arguments by *Mr. E. D. Briggs* and *Mr. William M. Briggs.*

BURNETT, C. J.—1. The issues involved in this suit are almost exclusively those of fact. The testimony reported has been carefully perused and examined. A detailed analysis of it would not add anything to the sum of legal knowledge garnered in the official reports.

It is enough to say, on that subject, that the plaintiff has failed to make out her case by a preponderance of the evidence.   Aside from the charge relating to the loathsome disease, the grievances enumerated in the complaint are in the main trivial and do not amount to personal indignities rendering life burdensome, within the meaning of the statute.   Indeed, there is no direct proof that the occurrences such as neglect of the premises, failure to supply literature, complaint of the expense of dinner parties, and the like, impaired the plaintiff's health or threatened her with bodily harm. As said by Mr. Justice Haskell in *Holyoke* v. *Holyoke,* 78 Me. 404 (6 Atl. 827):

"Divorce should not be a panacea for the infelicities of married life; if disappointment, suffering, and sorrow even be incident to that relation, they must be endured.   The marriage yoke, by mutual forbearance, must be worn, even though it rides unevenly, and has become burdensome withal.   Public policy requires that it should be so.   Remove the allurements of divorce at pleasure, and husbands and wives will the more zealously strive to even the burdens and vexations of life, and soften by mutual accommodation so as to enjoy their marriage relation.

"Deplorable as it is, from the infirmities of human nature, cases occur where a willful disregard of marital duty, by act or word, either works, or threatens injury, so serious, that a continuance of cohabitation in marriage cannot be permitted with safety to the personal welfare and health of the injured party.   Both a sound body and a sound mind are required to constitute health.   Whatever treatment is proved in each particular case to seriously impair, or to seriously threaten to impair, either, is like a withering blast, and endangers 'life, limb, or health,' and constitutes the sixth cause for divorce in the act of 1883.   Such is the weight of authority"—citing precedents.

2, 3.    Annulment of the marriage relation is not to
be granted under our statute for mere incompatibility
of temper or uncongenial disposition.   The conduct of
the offending spouse must be such as to threaten per-
sonal or mental injury to the one complaining, render-
ing it unsafe for the latter if the marriage relation is
continued, before a court is authorized to grant a
divorce.   Upon reading the record with care, there can
be no reasonable ground for granting a divorce on the
allegations outside of those relating to the malady men-
tioned in the complaint.   The implied charges of adul-
tery, based as they are on a statement of information
and belief, are of doubtful efficacy as a matter of
pleading; but evidence wholly fails to establish any-
thing in support of such charges.   An allegation of the
kind must be supported by more than mere innuendo
or suspicion.   In order to grant relief upon such a
charge, it must be proved as laid.

4.   The contest was waged chiefly on the subject of
the loathsome disease.   The complaint does not charge
that the defendant communicated it to the plaintiff, but
rather that through the process of conception and
gestation it was visited congenitally upon the son that
was born to the parties.   There is an irreconcilable
conflict in the evidence.   As usual, the experts do not
agree in many respects.   The plaintiff testifies to cer-
tain eruptions on the person of the defendant, which
he absolutely denies.   The testimony of the medical
men seems to be without dispute that the sores she
describes, if attributable to the disease in question,
would leave scars; and all of the physicians who have
examined the defendant declare there are no such
marks on his person.   Even the medical witnesses for
the plaintiff locate the disease in the throat of defend-
ant and denominate it "syphilitic sore throat."   Other

physicians who treated the defendant at the time pronounced it diphtheria. All agree that the disease charged is acquired only by contact, that it starts at the point of contact, and that it may be acquired innocently through various media. This would seem to indicate that, even if the defendant had syphilis, he did not contract it adulterously. It would be disgusting to analyze the testimony in detail, as in an address to a jury on a question of fact, and hence the subject will not be pursued further.

The learned judge who heard the testimony had before him the principal witnesses in the case. His long experience as a jurist and his opportunity to observe the manner of witnesses while testifying are of great aid in arriving at the conclusions of fact which we deduce from a reading of the record, and we adopt his determination of the matter.

The decree is affirmed.        AFFIRMED.

McBRIDE, BEAN and HARRIS, JJ., concur.