Hepworth, Appellant, *v.* Hepworth

Argued November 19, 1937.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John V. Diggins,* for appellant.

*A. B. Geary,* of *Geary & Rankin,* for appellee.

OPINION BY STADTFELD, J., December 17, 1937:

On March 20, 1936, the libellant, Benjamin A. Hepworth, exhibited his libel, upon which subpoena was allowed the same day, praying for a divorce a vinculo matrimonii against Ida A. Hepworth, his wife. Personal service was had, and a rule for bill of particulars issued, which bill of particulars was filed June 19, 1936. Meanwhile, a master had been appointed to take the testimony and report thereon. Subsequently, counsel for respondent filed a demurrer to the bill of particulars and libel, and the master's appointment was revoked, pending decision on this demurrer. On Sept. 11, 1936, the court filed an opinion and order sustaining the demurrer as to the charge of cruel and barbarous treatment endangering the life of the libellant, but dimissing the demurrer as to the charge of indignities rendering the libellant's condition intolerable and life burdensome, and directing that an answer be filed to the merits

within fifteen days. An answer was filed on Sept. 25, 1936, and the same master was reappointed. Four hearings were held, testimony covering four hundred and nineteen pages was taken, and the master made a report recommending the divorce on the ground of indignities to the person. Exceptions to said report were filed. The court below in an opinion by MacDade, J., entered a decree, dismissing the libel, from which decree this appeal is had.

We know of no authority or precedent for the filing of a demurrer to a bill of particulars and we only call attention thereto in order that it may not be assumed that we approve of such practice. A divorce can never be decreed upon the pleadings. It must be based on testimony, and this court has frequently pointed out its duty to examine the testimony and determine whether it support the grounds alleged in the libel.

In *James v. James,* 126 Pa. Superior Ct. 479, 191 A. 191, it is stated: "It is unnecessary to refer to the many authorities that have established the duty of this court to examine the entire record and determine on our independent judgment whether the record sustains the grounds alleged in the libel. We, of course, must give due weight to the conclusions of the master and the lower court, yet our duty is clear: *Upperman v. Upperman,* 119 Pa. Superior Ct. 341, 181 A. 252."

And in *Simon v. Simon,* 113 Pa. Superior Ct. 577, 173 A. 493, at p. 582: " 'We are called on to give careful consideration to the evidence to ascertain whether it is sufficient to establish the statutory grounds for a divorce, and this for the reason as was said in *Richards v. Richards,* 37 Pa. 225, that divorces ought not to be easily obtained, and the marriage relation should never be dissolved without clear proof of imperious reasons.' *Biddle v. Biddle,* 50 Pa. Superior Ct. 30. The burden of proof is upon the libellant to establish every essential fact by clear proof of imperious reason and it is our

duty to scrutinize it with proper care. *Buys v. Buys,* 56 Pa. Superior Ct. 338; *Aikens v. Aikens,* 57 Pa. Superior Ct. 424; *Heimer v. Heimer,* 63 Pa. Superior Ct. 476."

All of the testimony in the case was offered on behalf of libellant, none having been offered on behalf of respondent. The respondent was called as for cross-examination and, with few exceptions, admitted all of the allegations set forth in the bill of particulars and in the testimony offered on the part of libellant.

The parties were married on October 4, 1916. The libel was filed on March 20, 1936. There were no children born of the marriage. The libellant is 56 years of age, and the respondent 53.

The sole question involved is whether under the evidence the court should have entered a decree for libellant.

The libellant bases his right to a divorce on paragraph f. of sec. 10 of the Divorce Act of May 2, 1929, P. L. 1237, which gives that right to the innocent and injured spouse to obtain a divorce, whenever it shall be judged, that the other spouse: "f. Shall have offered such indignities *to the person* of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome." (Italics supplied).

It will be observed that the indignities must be "to the person" of the injured spouse.

In *Johnson v. Johnson,* 31 Pa. Superior Ct. 53, this court laid down the rule, on p. 56, after citing a number of cases: "The above cases clearly establish that the indignities which entitle a wife to a divorce *must be to the person,* as well as continued." (Italics supplied).

The law does not define indignities, but depends upon the circumstances of each case, but it must be distinguished from cruel and barbarous treatment: *May v. May,* 62 Pa. 206; *Power's Appeal,* 120 Pa. 320, 14 A. 60; *Melvin v. Melvin,* 130 Pa. 6, 18 A. 920; *Mendenhall*

*v. Mendenhall,* 12 Pa. Superior Ct. 290; *Krug v. Krug,* 22 Pa. Superior Ct. 572; *Lynn v. Lynn,* 76 Pa. Superior Ct. 428.

The opinion by Judge RHODES in *Sleight v. Sleight,* 119 Pa. Superior Ct. 300, 181 A. 69, citing older authorities, says: "Indignities to the person constitute a separate and distinct ground for divorce, under par. (f) § 10, of 'The Divorce Law' of May 2, 1929, P. L. 1237 (23 PS § 10 (f) ). The principles applicable thereto have often been stated. 'It is, of course, impossible to lay down any general rule as to what constitutes such indignities to the person as to render the condition of the injured spouse intolerable and life burdensome; such matters necessarily depend upon all the circumstances of the particular case and the position in life, character and disposition, of the parties: *Richards v. Richards,* 37 Pa. 225; *Aikens v. Aikens,* 57 Pa. Superior Ct. 424; *Sharp v. Sharp,* 106 Pa. Superior Ct. 33, 161 A. 453. It is well settled, however, that it is not with isolated occurrences that the law concerns itself in determining whether a divorce should be granted upon this ground, but only with indignities, so repeated and continuous as to constitute a course of conduct which renders the complaining party's condition intolerable and life itself a burden: *Esenwein v. Esenwein* (312 Pa. 77, 167 A. 350) ; *Dailey v. Dailey,* 105 Pa. Superior Ct. 461, 161 A. 475; *Sharp v. Sharp,* supra. Such indignities, we have frequently said, "may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient": *Breene v. Breene,* 76 Pa. Superior Ct. 568; *Koontz v. Koontz,* 97 Pa. Superior Ct. 70; *Sharp v. Sharp,* supra': *Mathias v. Mathias,* 114 Pa. Superior Ct. 444, 446, 174 A. 821, 822."

While the law of this State is liberal as to the number of grounds for which a divorce may be obtained, it is strict as to requirement of proof necessary to obtain it. The ground or grounds alleged in the libel must be clearly established by the evidence in order to warrant a decree of divorce. *Putt v. Putt,* 118 Pa. Superior Ct. 74, 180 A. 92; *James v. James,* supra.

"The respondent's misconduct," quoting from the Master's Report, "consisted of continuous and ever recurring solicitations, successful and otherwise, from her friends and neighbors for loans of money and of giving to her friends, neighbors and tradesmen postdated checks, many of which went to protest because of insufficient funds. This conduct on the part of the respondent commenced soon after marriage and continued without ceasing right up to the time this divorce action was started. It was common knowledge among the friends and neighbors of the parties to this divorce that the respondent was indulging in these financial manipulations and this subject was a constant source of conversation among these same friends and neighbors at card parties and other gatherings."

It would be to no purpose to quote at length from the testimony. An examination of the same which is discussed at length in the Master's Report, tends to establish the following facts, which relate principally to borrowing: "1. The greatest amount she had borrowed from anyone was $350 and the smallest $2 or $3. 2. From two to five years after marriage he learned about her borrowing and begged her to stop but she never did. He provided amply. 4. In 1933 or 1934 he learned of a bill at Pretty's Store of $12.98 which had been running since 1926. 5. That the item of $350 had been borrowed from Jethro Johnson, he learned through a letter he found. 6. She borrowed from Helen Somers $85. 7. She admitted she attempted to borrow from a relative named Cameron. 8. Had procured the endorse-

ment of Morris Richardson to a note for $200. 9. He saw a note from Annie Dalton asking respondent to pay on a note for $100 a balance due of $10. 10. A loan from Jennie Murray of $100. 11. A loan from Mulford Speyer of $100. 12. A bill for groceries at Egan's Store, the amount not stated. 13. A loan from her Aunt, $100. The effect of the foregoing, long after the episodes and learning of them through gossip, on the libellant was that he couldn't eat or sleep, etc., so that he asked her whether she had done or would do shoplifting. 14. She gave a check to the milkman which proved to be bad for $49. 15. She drew from their joint account and her explanation was she got behind $300. 16. She took from the joint account $200 or $300. He later learned some of the money borrowed was to replace this. 17. The libellant was in 1933 or January 1934, forced to take over the management of the household. 18. That at one time, years before, respondent while treasurer of a Church Society used funds, which she repaid by borrowed money, amounting to $100."

The sole complaint of libellant relates to the financial transactions of the respondent, his wife. There is not a word of evidence of other than respectful treatment to the *person* of libellant. It should be borne in mind that since the Act of 1893, P. L. 344, a married woman has the right to contract on her personal credit. Thriftlessness or poor financial management of a woman's affairs, is no cause for divorce: *Schulze v. Schulze*, 33 Pa. Superior Ct. 325.

The libellant himself testified on examination in chief, as well as under cross-examination, that his sole complaint is that of borrowing and giving post-dated checks: "Q. Then in other words, the real cause of your difficulties was the fact that she would borrow money. A. Yes, borrow money, and she gave bad checks which gave me a bad name."

That the acts set forth in the bill of particulars, as

well as in the testimony, and assuming that the testimony supports all of the allegations, do not constitute such indignities as entitle libellant to a divorce, is clear from all of our decisions. In *Hexamer v. Hexamer,* 42 Pa. Superior Ct. 226, which was a proceeding under the Act of June 25, 1895, the provisions of which are practically the same as those of 1929 with the exception that under the Act of 1895 the indignities must have forced the injured party to withdraw from the house and family of the respondent, the real important factor in determining what is cruel and barbarous treatment and indignities is set forth and summarized in the first sentence of paragraph 2 of the syllabus. "2. The cruel and barbarous treatment and the indignities to the person, rendering the condition of the husband intolerable or life burdensome, which are by the Act of June 25, 1895, made a cause for divorce relate to the personal treatment of the husband by the wife." To same effect see *Johnson v. Johnson* supra. A quotation from the opinion by CORSON, J. in *Lawson v. Lawson,* 52 Montgomery Co. 251, is illuminating as applied to the instant case. "The libellant complains that about a week after they were married the respondent purchased a pair of silk stockings costing $3.00, while the libellant's earning at this time amounted to about $15.00 per week. This might show that the respondent is extravagant; was a poor helpmate, and lacking in judgment, but could not be said to be an indignity to the person of the libellant within the meaning of the divorce law."

In the instant case, the libellant and respondent continued to live together in their joint home until after the divorce proceedings were instituted. In *Cunningham v. Cunningham,* 119 Pa. Superior Ct. 380, 181 A. 458, this court stated at p. 381: that continued living in the same house, "does not preclude the granting of a divorce" but as the court put it "The fact may, how-

ever, be taken into consideration in passing on the degree or severity of the alleged indignities which renders the libellant's condition intolerable and his or her life burdensome. If one physically and financially able to leave the common home continues to stay there, it may have some bearing on the intolerableness of his condition and the burdensomeness of his life."

After a careful examination of the entire record, we concur in the well considered opinion and finding of the lower court.

Decree affirmed.