## GEORGE ARTHUR SISSON *v.* MARY SISSON.

### No. 2521.

ARGUED JANUARY 5, 1944.                    DECIDED JANUARY 20, 1944.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY LE BARON, J.

The lower court rendered a decree of absolute divorce in favor of George Sisson and against Mary Sisson, dismissing her cross libel for a divorce from bed and board after his libel and her cross libel had been consolidated in a contested trial at which only the husband and wife testified.

The cause of this divorce as alleged in the libel substantially follows the language of the statute, and in turn the grounds of the absolute divorce granted by the decree are those permitted by paragraph 8 of section 4460 of the Revised Laws of Hawaii 1935, as amended by Act 27, Session Laws of 1935. The pertinent part of this statute is its heading and first sentence: "GROUNDS FOR DIVORCE. Divorces from the bond of matrimony shall be granted for the causes hereinafter set forth and no other," and its eighth paragraph which reads: "When either party is guilty toward the other of such cruel treatment, neglect or personal indignities, though not amounting to physical cruelty, continued over a course of not less than sixty days, as to render the life of the other burdensome and intolerable and their further living together insupportable."

The wife appeals. Her appeal questions as a matter of law the sufficiency of the evidence to sustain the decree of absolute divorce in respect to the proof of the grounds upon which it rests.

Viewing the evidence in a light favorable to the husband and giving due regard for the determination of the trial judge, we find from the record that the purported proof of these grounds is in the testimony of the husband, who bases his cause upon a course of conduct of the wife and its cumulative and deleterious effect upon him. The gist of this proof is that the course of conduct complained of was her discordant behavior which had extended over a period of years, consisting mainly of frequent naggings and scoldings arising out of ordinary domestic matters and characterized by the husband as "tantrums." In support of the effect which the husband claimed such behavior had upon him, he testified that his inability to endure it disturbed his peace of mind which prevented him from performing his work as he should, made him

dread coming home after work, forced him back to work from a sickbed before recovery, drove him out of the home to sleep in his automobile, to take a walk or attend a show, made him feel that if it continued he would become crazy, and caused him to entertain the thought of committing murder and suicide by driving his automobile with his wife and himself in it over a cliff.

The testimony of the wife followed, and it should be pointed out that the husband's subjective testimony on the mental distress which the wife's conduct produced in him is entirely without corroboration and all evidence of it denied by the wife on the witness stand. Her testimony described their marital difficulties as normal differences reasonably to be expected in ordinarily happy marriages of many years' duration. Consistent with this description, he admits that during all the time when such conduct was occurring, together with its effect upon him, they were living as husband and wife and continued marital intercourse up to the day he left the home, which was only ten days before he filed his libel for divorce. In addition, he did not dispute the wife's testimony that she was undergoing menopause at the time, and that she was then, and had been for eighteen years, suffering aftereffects of an operation performed a year after the birth of the only child of the couple. He did not claim that there was no reasonable explanation for her conduct, or make it clear that it in no way was attributable to his own. Further, he did not maintain that the wife was actuated by any ill will or hatred toward him, that she had ceased to love him, or at any time had indicated a desire of alienating their marriage relationship.

No marriage should be dissolved without clear and convincing proof of the causes provided by statute. The legal status of the relationship is an honorable estate requiring of every husband and wife a high degree of stead-

fastness and forbearance throughout the vicissitudes and trials of life as part of its essential obligations. The continuing purpose and concept of the marital relation cannot be better stated than it was in the language of Judge Hemphill in the early case of *Sheffield* v. *Sheffield*, 3 Tex. 79, 85, 86, which is as timely today as when expressed almost a century ago. At the risk of tediousness, we quote: "The parties have pledged themselves, not only for their own happiness, but for purposes important to society, to live together during the term of their natural lives. This engagement is the most solemn and important of human transactions. It is regarded by all Christian nations as the basis of civilized society, of sound morals, and of the domestic affections; and the relations, duties, obligations and consequences flowing from the contract are so important to the peace and welfare of society, as to have placed it under the control of special municipal regulations, independent of the will of the parties. The mutual comfort and happiness of the parties are the principal, but not the only, objects of the engagement. It is intended also for the benefit of their common offspring, and is an important element in the moral order, security and tranquility of civilized society. The parties cannot dissolve the contract, as they can others, by mutual consent, and no light or trivial causes should be suffered to effect its recision. While full effect is to be given to the statute, it should be remembered that, according to the experience of the most enlightened nations, the happiness of married life greatly depends on its indissolubility, and that the prospect of easy separation foments the most frivolous quarrels and disgusts into deadly animosities. Parties may not be able to live together very harmoniously, but they cannot be separated except for reasons approved of by the law. And when they know they must live together, except for causes prescribed by the law, they learn, in

the language of Lord Stowell, 'to soften, by mutual accommodation, the yoke which they know they cannot shake off; they become good husbands and wives from the necessity of remaining good husbands and wives; for necessity is a powerful master in teaching the duties it imposes.' Such construction ought to be given the statute, and such weight allowed the acts of the parties, as would effect the legislative intention; but there should not be such looseness of exposition as would defeat the beneficial objects of the marriage institution, and sunder its bonds with almost as much facility as if it were a state of concubinage, dependent alone on the will of the parties."

Paragraph 8, *supra*, was added to the lawfully prescribed causes of divorce by Act 196, Session Laws of 1931. It does not appear to have been copied from any one statute of other jurisdictions, but its language indicates that the legislature of Hawaii in line with the modern trend has captured the spirit of those other jurisdictions, which expressly by statute have extended the cause of divorce beyond strict adherence to physical cruelty to a more subtle form of cruelty against the mind, feelings and sensibilities, which more subtle form of cruelty includes the excesses, ill-treatment, outrages and similar connotations of unprovoked misconduct of a persistent and consistent nature amounting to a species of mental cruelty of one spouse toward the other. (See Stats. Ark. 1937, § 4381, par. 5, p. 1270; Rev. Stats. Mo. 1929, c. 7, art. 3, § 1350, p. 563; Ore. Comp. L. Ann. 1940, § 9-907, par. [6], p. 120; Purdon's Pa. Stats. 1936, tit. 23, c. 1, § 10, par. [f], p. 1019; Vernon's Tex. Stats. 1936, art. 4629, par. 1, p. 887; Pierce Code [Wash. 1939], § 7501, par. 5, p. 1601.) However, its language is clear and its words are strong, leaving no doubt of its meaning and intent. Consequently, whether any course of unprovoked misconduct of one party to the marriage relationship

amounts to the statutory "cruel treatment, neglect or personal indignities, though not amounting to physical cruelty" toward the other, reasonably producing by its cumulative effect "such a degree of mental distress and suffering" in the other as well as being of "such nature, frequency and degree" as to render his or her life "burdensome and intolerable and their further living together insupportable" (*Jem* v. *Jem*, 34 Haw. 312) so as to constitute a cause of divorce permitted by paragraph 8 of the statute (§ 4460, *supra*) necessarily depends upon the circumstances of the particular case, including the position in life, character, health and disposition of the parties, for which in the nature of things no fixed rule can be laid down. However, such course of misconduct not only must be intentional, but also studied, willful and deliberate, clearly subversive of the marital relationship and plainly indicating a manifestation of either an estrangement or a settled hate upon the part of the offending spouse. (See *Rose* v. *Rose*, 9 Ark. 507; *Haley* v. *Haley*, 44 Ark. 429; *Bowers* v. *Bowers*, 98 Ore. 548, 194 Pac. 697; *Upperman* v. *Upperman*, 119 Pa. Super. 341, 181 Atl. 252; 27 C. J. S. § 44, 585-587 for collection of authorities.)

Here the parties have been married for about twenty years, having reared during that time to the age of nineteen one child of their marriage as well as children of each by former marriages, and having begun their married life with few worldly possessions upon a small farm, moving later to another farm, both of which the wife worked during periods that the husband was away and elsewhere employed. He, now at the age of sixty-two, is a fairly well-to-do civil engineer and she, at fifty-two, destitute. She at all times has been a dutiful, hard-working, frugal and faithful wife, dependent financially upon her husband who has given her as a personal allowance but a pittance of his earnings.

The evidence is conclusive from the foregoing that the wife was never remiss in her marital obligations, either as a wife or a mother, which proof completely refutes any establishment of a cause of divorce on the ground of neglect within the meaning of the statute. Consequently in order for the decree to be justifiable it. must rest upon either or both of the remaining grounds of paragraph 8 of section 4460, *supra*, which are cruel treatment and personal indignities.

We can find no clear proof that the conduct of which the husband complained was not provoked by his conduct' or was based upon a reasonable cause. The admitted amount of the paltry allowance upon which the husband kept his wife throughout their married life, when compared to his gradually increasing resources, tends to show a lack of consideration on his part for her ultimate good, which subjected her to a continuous financial struggle to live in accordance with her station in life. From this situation it is reasonable to infer that she, as well as he, was suffering from a mental distress, aggravated by her impaired health to the extent that her so-called tantrums often caused her to go to bed for a day or two. Her distress is therefore understandable as being the underlying cause of her vociferant behavior, which he admits arose largely from domestic problems of finance and in which the evidence shows no conciliatory attitude on his part. Hence the husband is in no position to rely upon such conduct as a cause of divorce. (See *Bohan* v. *Bohán*, 56 S. W. 959 [Tex. Civ. App. 1900] ; *Carter* v. *Carter*, 292 Ky. 344, 166 S. W. [2d] 453; *Viney* v. *Viney*, 151 Pa. Super. 86, 29 A. [2d] 437.)

It is proper to point out further that we can find no satisfactory proof that the conduct complained of was studied, willful and deliberate, or expressive of any ill will or settled hate toward the husband, and although

continuance of marital relations, if maintained with a desire and reasonable hope for better treatment until forbearance ceases to be a virtue, may not constitute condonation, it nevertheless shows that the family relation was not disrupted and tends to show that the nature of his distress was not of such intensity as to have made his life with her as unbearable as he claims. (See *Cunningham* v. *Cunningham*, 119 Pa. Super. 380, 181 Atl. 458; *Hepworth* v. *Hepworth*, 129 Pa. Super. 360, 195 Atl. 924.)

We agree that the conduct of the wife was proved to have been extremely irritating and disturbing to the peace of mind of the husband, for which she cannot be held to be entirely blameless. Nevertheless, it did not constitute cruel treatment or personal indignities in the statutory sense. In short, the case for the husband taken as a whole does not reflect by clear and satisfactory evidence that burdensome, intolerable and insupportable state of affairs contemplated by the statue in its strong and unambiguous language, nor does the record present proof of imperious reasons why the bonds of matrimony should be dissolved, a preponderance of evidence in support of any of the grounds invoked, and strict proof of every essential fact that is required of a libelant before a decree of divorce is deemed to be warranted. Consequently as a matter of law there is an insufficiency of evidence to support it.

This is purely a case of incompatibility of temperament, which is not a cause of divorce in this jurisdiction. (*Jem* v. *Jem*, *supra*; § 4460, *supra*.) We venture to say, however, that much of the apparent inability to live together without turmoil would be dispelled and harmony result if appreciation of the marriage relationship with profound respect for its responsibilities and obligations were maintained, and particularly a realization on the part of the husband that the wife is a life partner in a mutual enterprise and entitled to be regarded as such.

614

The appeal is sustained, the decree appealed from reversed in so far as it grants an absolute divorce, and the cause remanded to the lower court with instructions to dismiss the libel.

*M. K. Ashford* (*F. E. Thompson* and *C. F. Parsons* on the briefs) for libelee-appellant.

*P. Cass* (*Cass & Silver* on the brief) for libelant-appellee.