Argued October 6, 1949.
This is a divorce action brought by a husband alleging that his wife committed indignities to his person. The matter was referred to a master who, after several hearings, recommended that a divorce be granted. His recommendation was accepted by the court below which, after dismissing respondent's exceptions thereto, entered a decree in divorce, and the wife respondent took this appeal.
The parties were married on March 5, 1942 and resided together until April 23, 1947, when the libellant left the marital habitation and on November 6, 1947 filed his libel. One child, a daughter who resides with the respondent, was born to the couple on January 5, 1943.
Indignities to support a decree in divorce must be "to the person" of the injured spouse. Hepworth v. Hepworth, 129 Pa. Super. 360,195 A. 924. They must consist of a course of conduct which renders the condition *Page 501 
of the innocent party intolerable and his or her life burdensome, and they must be shown by evidence from which an inference of settled hate and estrangement may be deduced.Davidsen v. Davidsen, 127 Pa. Super. 138, 191 A. 619;Monaco v. Monaco, 160 Pa. Super. 117, 50 A.2d 520; Bockv. Bock, 162 Pa. Super. 506, 58 A.2d 372.
In this case, the record is voluminous, consisting of 460 typewritten pages of testimony. The respondent has categorically denied every allegation of wrongdoing and she produced witnesses who tended to support or explain her denials. The libellant's allegations — or some of them — were supported by the testimony of his mother and his sister. It is the type of divorce case in which no purpose is served by a lengthy discussion of the testimony. From a reading of it, however, it is obvious that the libellant was — or is — interested not only in securing a divorce but in besmirching his wife. As one of many illustrations of the latter, he testified, for no apparent reason and certainly with no bearing on the case, about intimate relations between the parties before their marriage.
The libellant's material allegations of wrongdoing on the part of his wife consist mostly of her embarrassing and humiliating actions in public and her calling him vile names. These allegations, denied by the respondent, are supported by the testimony of the libellant and, in part, by the testimony of his mother and his sister. However, from an examination of their testimony, it appears that the respondent's alleged offenses occurred when she was intoxicated. The "embarrassing and humiliating actions in public" occurred only in taprooms or after visits to them. The testimony relative to name calling may be summarized and illustrated by the testimony of libellant's mother who testified that she heard the respondent call the libellant "vile names about twenty-five times, because when Evelyn [the respondent] *Page 502 
drank she didn't realize . . . how she was real nasty. She was never a nice drunk". Excessive or continual drunkenness is not an excuse or justification for a course of improper conduct by one spouse toward the other but before such conduct may be the basis for a divorce decree it must clearly appear that the libellant is an innocent and injured party. Othmer v. Othmer,158 Pa. Super. 384, 45 A.2d 389. The libellant in this case cannot meet this test.
By the uncontradicted testimony, including that of the libellant, he took the respondent to the taprooms where she became intoxicated. They were married in a church at eight o'clock in the evening and according to the libellant's own testimony, he took his bride from the church directly to a taproom where they remained, drinking, for several hours. The next day, they went to Irwin, Pennsylvania, and, again according to libellant's testimony, he took the respondent from the railroad station in Irwin to a taproom where they spent several hours and she became intoxicated and "humiliated" him. So during their married life — or until they separated — when she went to a taproom, he took her there, his excuse for some of the times now being that she stated that if he did not take her, she would go alone. This excuse is not credible, particularly in view of respondent's physical condition, she having suffered an attack of infantile paralysis when she was nine months old and since has been able to walk only by the use of crutches. For the respondent's actions while intoxicated, the libellant must, at least, share the burden (Cf. Othmer v.Othmer, supra) and they will not support a decree in divorce.
There is some testimony relative to accusations of infidelity made by the respondent but libellant's testimony showed that he purposely aroused the suspicions of his wife. He testified that he wrote cards to himself — which he showed to the respondent — signing a certain *Page 503 
woman's name to them, and, also, placed pictures of the same woman "in strategic spots where my wife could find them". Certainly, not the acts of an "innocent and injured spouse".
After our review of the record, giving full consideration to the recommendation and findings of the master, it is our independent conclusion that the libellant is not entitled to a divorce, and, therefore, the decree of the court below will be reversed.
The respondent received $35.00 as counsel fees upon entry of appearance of her counsel on January 9, 1948. On February 21, 1949, she presented a petition for "additional counsel fee and reimbursement of actual costs expended on her behalf", the amount of the latter being set forth as $24.75. To this petition, the libellant filed an answer. No depositions were taken and the court below, after argument on the petition and answer, refused the petition. We think the prayer of the petition should have been granted. Cf. Dash v. Dash, 163 Pa. Super. 229,60 A.2d 407.
The decree of the court below granting a divorce is reversed; and the case is remanded so that the court below may enter an allowance for additional counsel fees in favor of the respondent.